THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JESSIE OWENS (Impleaded), Defendant-Appellant.

(No. 52245;

First District—May 5, 1971.

Thomas H. Kabaker, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James Sternik, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

Defendant, Jessie Owens, appeals from convictions for the rape and aggravated kidnapping of one, Lucy Lugo. The defendant was tried and convicted after a bench trial in the Circuit Court of Cook County. He was sentenced to a term of not less than thirty nor more than forty years for each of the crimes.

On June 23, 1966, at about 11:30 P.M., the defendant knocked on the door of Jimmy Lugo's apartment and asked for a person named Gonzales. When told no such person lived there, he drew a gun and threatened to shoot Lugo's one-year-old daughter. Lugo and his family fled the apartment, but his fourteen-year-old daughter Lucy remained inside. The defendant dragged her out the back way onto the porch and ordered her into the street. Once on Augusta Boulevard, the defendant again drew the gun and forced Raymond Goveia back into his parked car and ordered him to drive around, saying, "Drive off and don't try nothing funny, or I'll blow your brains out." Goveia replied, "Mister, you can have my car, clothes, anything you want, but don't get excited." Goveia testified he drove around for about and hour and a half, during which time the defendant kept threatening him. The defendant then asked him whether he had something with which he could be tied up. Goveia said he had some tape in the trunk. When the car stopped, Owens ordered Lucy to tie up Goveia. When Lucy finished, the defendant asked, "Is it secure enough? If it isn't, I'm going to check, I'm going to put a bullet in your head." They started driving around again, this time with the defendant at the wheel, Lucy next to him, and Goveia tied up in the back

seat. Goveia testified that Owens told Lucy to remove her clothes, and she began to cry. The defendant said, "You're not cooperating with me. I'm going to have to kill you." Owens stopped the car, had intercourse with the girl, and then began driving again. This sequence was repeated about ten or twelve times. Lucy neither cried out nor resisted during any of the assaults, but she testified that she submitted to the defendant against her will.

Prior to dawn, they stopped three times, twice to make telephone calls and once to fix a flat tire. Lucy did not attempt to escape during any of these stops. At one point the defendant ordered Lucy to take Goveia's wallet out of his pocket and give it to him. The wallet contained more than fifty dollars.

As morning dawned, Owens took them to Marion Short's apartment where he was living. He was afraid the police would be looking for the girl, and she might be recognized in the daylight. Goveia asked for a Bible to read. "I thought I was going to die, and she let me read a Bible." Marion Short pleaded with the defendant to let Lucy and Goveia go. She also told him to give back the money, which he did. At about 6:30 in the morning he told them they could leave. Goveia and Lucy walked out and drove off in Goveia's car. After they left Marion Short's apartment, Goveia bought some gasoline and then drove to his home, and as they alighted from his automobile they stopped a passing police car. After being questioned by police officers, Lucy was taken to Mount Sinai Hospital for examination. Owens was found and arrested about 11:00 A.M. that morning.

The physical examination of Lucy Lugo that same morning revealed no bodily injury except for a tear on the hymen about six to ten hours old. Tests of Owens' clothes revealed bloodstains on the crotch area of the pants and on the fly area of the briefs.

The issues on appeal are whether the State proved the defendant guilty beyond a reasonable doubt of the crimes of rape and aggravated kidnapping, and whether the sentence of from thirty to forty years was excessive.

The defendant cites the case of *People v. DeFrates* (1965), 33 Ill.2d 190, 194, and correctly states a rule applicable to the crime of rape:

> "Where, as here, the charge is forcible rape, it must be proved beyond a reasonable doubt that the act of intercourse was performed forcibly and against the will of the complaining witness. And while useless or foolhardy acts of resistance are not necessary, if the prosecutrix has the use of her faculties and physical powers, the evidence must show such resistance as will demonstrate that the act was against her will. * * * Voluntary submission, no

matter how reluctantly yielded, amounts to consent, and removes from the act an essential element of the crime of forcible rape."

■■ The defendant suggests the facts of this case indicate that Lucy voluntarily accompanied the defendant and consented to the intercourse. Specifically, he alleges that Lucy was not subject to a paralyzing fear and could have escaped on several occasions if she wanted to: when everyone else in her family fled the apartment; when the defendant left her on the back porch of the apartment; when the defendant left her in an alley behind the apartment; and when the defendant made the two telephone calls.

■■ However, it is well established in Illinois that resistance is not necessary under circumstances where it would be dangerous or futile. (*People v. Smith* (1965), 32 Ill.2d 88; *People v. Brown* (1964), 29 Ill.2d 375.) In *People v. Gray* (1969), 106 Ill.App.2d 110, the court held that a rape victim is not duty bound to cry out or resist when confronted first with a knife and later with a gun. In this case to have taken advantage of the enumerated opportunities could have meant death. At no time was it shown that she had a good enough opportunity to escape a bullet, and the defendant's unstable behavior and repeated threats indicated he might shoot if he did not get cooperation.

First, he terrorized the Lugo household by brandishing his pistol and threatening to kill the baby. Next, he grabbed Lucy by the neck and dragged her down the stairs onto the porch. Then, he threatened Raymond Goveia with his gun. Finally, when he told Lucy to take off her clothes and she began crying, he said, "You're not cooperating with me. I'm going to have to kill you." Goveia was so frightened he asked for a Bible to read. It is not surprising that a fourteen year old girl failed to try to escape or cry out.

While this court is well aware of the high standard of care required in reviewing evidence in a case of this nature, the evidence of guilt in this case is overwhelming.

■■ The contention that the sentence was too severe is not well taken. In *People v. Taylor* (1965), 33 Ill.2d 417, the court held the sentence of the trial court should not be disturbed unless it appears the penalty constituted a great departure from the fundamental law and its spirit and purpose. The rationale is that the trial judge has a better opportunity to make a sound determination of the punishment to be imposed.

Although there is no maximum penalty for rape (Ill. Rev. Stat., ch. 38, par. 11—1), it is generally agreed that the sentence should be proportionate both to the circumstances of the case and the possibility of rehabilitation. In view of the seriousness of the crime committed in this instance and the prior convictions for rape and armed robbery, as shown

on the hearing in aggravation and mitigation, we think the trial judge imposed proper sentences.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

ADESKO, P. J., and BURMAN, J., concur.