The STATE of Utah, Plaintiff
and Respondent,

v.

Clyde Lloyd STUDHAM, Defendant
and Appellant.

No. 14911.

Supreme Court of Utah.

Nov. 28, 1977.

Lynn R. Brown of Salt Lake Legal Defender Assn., Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., R. Paul VanDam, Salt Lake County Atty., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Defendant, Clyde Lloyd Studham, appeals from a jury conviction of rape.[1] He assigns three errors: (1) insufficiency of the evidence; (2) failure to give a cautionary instruction to the effect that a charge of rape is one easy to assert and difficult to defend; and (3) error in permitting cross-examination of the defendant in regard to a previously issued order.

The prosecutrix, Janis _____, had lived with defendant in a meretricious relationship beginning in November, 1972. A son, Chad _____ was born on September 14, 1973. The relationship between Janis and the defendant had terminated in December of 1974 and the defendant was under a court order not to annoy or visit her.

At approximately 4:00 a. m. on the morning of March 5, 1976, Janis was awakened at her apartment by a knocking and ringing of her doorbell. Defendant, who had been drinking, was at the door and he said he wanted to talk to her, but she refused to let him in. He kicked the door open and entered; and he remained in the apartment for about two hours, during which there was some kissing and amorous advances.[2]

The prosecutrix testified that in his efforts to force sexual intercourse upon her the defendant threatened her, pinned her to the floor during a struggle, put his hand over her mouth so that she had difficulty breathing, and forced intercourse upon her against her will. She did not scream or attempt to run from her apartment, which she said was due to its futility and the fact that her young son was asleep in the adjoining room.

After the defendant left, she called her mother, who reported the incident to the police. Deputy Lester Newren of the Salt Lake County Sheriff's office came to investigate. Janis's only visible injuries were a bruised face and cut lip; and there were blood stains on her bathrobe. Pursuant to his questioning and investigation, he took the prosecutrix to St. Mark's Hospital where she was examined by Dr. John Corkrey. Later in the day the defendant was arrested and charged with this offense.

Defendant's argument that the evidence is not sufficient to prove his guilt beyond a reasonable doubt is: that it rests almost solely upon her own self-interested testimony; that it is inherently improbable and inconsistent because, though she claims force, and denies consent, she did not scream, or try to escape from the apartment even though during the time he was there she had opportunity to do so.

■ Most crimes are committed in such secrecy as can be effected; and that is particularly so of this type of offense. Therefore, the question of guilt or innocence often depends upon the weighing of the credibility of the victim against that of the accused. Accordingly, the rule is that if there is nothing so inherently incredible about the victim's story that reasonable

---

1. U.C.A.1953, Sec. 76–5–402.

2. We assume that the jury believed those aspects of the evidence which support their verdict and survey the record in that light. See *State v. Harless*, 23 Utah 2d 128, 459 P.2d 210 (1969); *State v. Howard*, Utah, 544 P.2d 466 (1975).

minds would reject it, a conviction may rest upon her testimony alone.[3]

In regard to the failure of the victim to make an outcry, this is to be said: Whether an outcry was made, or should have been made, depends upon how practical and effective it might have been. It is evidence which may be received and it is one of the circumstances to be considered as bearing upon the critical issue of consent.[4] But mere failure to make such an outcry does not render a conviction unsupportable.

The essential element in rape is the forcing of intercourse upon a woman "without her consent" and "against her will." It is sometimes said that those terms mean essentially the same thing,[5] but this is not true because such an act might occur in circumstances which would be "without her consent" but which would not necessarily involve overcoming her will and her resistance, both of which must be proved. In that regard there has often been much preoccupation with and stress placed upon the matter of the physical confrontation between the accused and the victim; and it has sometimes been said that she "must resist to the utmost" or other expressions of that import. But that view no longer obtains.[6] Even though it is necessary that the rape be against the victim's will, manifest by a determined effort on her part to resist, it is not necessary that it be shown that she engaged in any heroics which subjected her to great brutality or that she suffered or risked serious wounds or injuries.[7]

What we think is a sounder view recognizes that the bruising and terrorizing of the senses and sensibilities can be just as real and just as wrong as the beating and bruising of the flesh; and that the law should afford a woman protection, not only from physical violence, but from having her feelings and sensibilities outraged by force or fear in violation of what she is entitled to regard and protect as the integrity of her person. Accordingly, in determining whether the victim's will and resistance were overcome, it is appropriate to consider that this may be accomplished by either physical force and violence, or by psychological or emotional stress imposed upon her, or by a combination of them. As to the degree of resistance required: The victim need do no more than her age and her strength of body and mind make it reasonable for her to do under the circumstances to resist. In this case there is a reasonable basis in the evidence upon which the jury could believe beyond a reasonable doubt that that test was met.

In urging that the court committed error in refusing to instruct the jury that rape is easy to charge and difficult to defend against, defendant asserts that it was particularly applicable here because, in addition to the lack of corroboration, and their prior difficulties, there existed the possibility of malice behind the charge. We are aware that such an instruction in abstract terms and not focused upon the particular evidence in the case has been given without it being prejudicial error. Nevertheless, such an instruction is not looked upon with favor since it is in the nature of a directive to the jury as to how they should evaluate evidence, rather than a statement of law. Under our procedure the judging of the evidence should be left exclusively to the jury and the trial judge should neither comment thereon nor give any indication as to what he may or may not think as to the quality of the evidence.[8] In any event, we see no reason to believe that the failure to give such an instruction in this case was error.

---

3. *State v. Ward*, 10 Utah 2d 34, 347 P.2d 865 (1959).

4. 75 C.J.S. Rape, Sec. 72 at p. 550.

5. 75 C.J.S. Rape, Sec. 11.

6. *State v. Horne*, 12 Utah 2d 162, 364 P.2d 109 (1961).

7. *State v. Ward*, supra.

8. *State v. Reddish*, Utah, 550 P.2d 728 (1976); *State v. Rutledge*, 63 Utah 546, 227 P. 479 (1922).

To the defendant's claim of error in allowing cross-examination on a court order prohibiting defendant from visiting the prosecutrix, the state makes two effective rejoinders: First, that the subject was opened up by defendant's own counsel on direct examination and thus could properly be probed in cross-examination. Second, that the testimony was relevant to inquire about the background and relationship between the parties, relied upon by the defendant himself, as bearing upon the critical issue, of whether there was consent, or forcible rape.

Affirmed. No costs awarded.

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.