**STATE of Utah, Plaintiff and Respondent,**

v.

**Michael Wayne GRIFFIN, Defendant and Appellant.**

No. 18588.

Supreme Court of Utah.

July 12, 1984.

Frances M. Palacios, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HOWE, Justice.

Appellant, Michael Wayne Griffin, appeals from jury convictions for attempted murder in the first degree and for aggravated kidnapping in violation of U.C.A., 1953, §§ 76–5–202, 76–4–101 and 76–5–302. He argues that the State failed to prove the specific intent required for attempted criminal homicide and that the evidence on both counts was insufficient to convict him.

This Court definitively laid down the standard of review on challenges to the sufficiency of evidence for jury convictions in *State v. Petree*, Utah, 659 P.2d 443 (1983), in stating at 444:

> [W]e review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.

Thus, we must look at the facts and their inferences in a light most favorable to the jury verdict.

Briefly, the evidence was that Marsha Hafen, the victim, implicated Griffin, a recent parolee, in a burglary. Griffin escaped from the scene of the burglary, but Hafen was apprehended. Griffin's apparent girlfriend, Margaret Jane Bruner, was the stepdaughter of the owner of the burglarized house. She was also a friend of Hafen's. Two days after the burglary, Bruner invited Hafen to go partying for the evening. Bruner drove the two of them in her automobile to where Griffin was waiting. Griffin got into the car on the passenger side, thus placing Hafen in the middle. Bruner drove the three of them to a remote spot in southwest Salt Lake County near the Bacchus Highway

and stopped on a dirt road blocked by a cable barrier.

Holding a semi-automatic handgun that he had taken in the burglary, Griffin told Hafen to exit the car so the two of them could talk. Upon Griffin's questioning, Hafen revealed that she had given his first name to the police. Griffin told her that "nobody uses [my] name and gets away with it." He ordered her to stand on a mound of dirt near the car and to take about 20 pills he obtained from Bruner. The pills had markings on them indicating they were quaaludes (depressants). That dosage of quaaludes would have been enough to kill an adult. He aimed the gun at her, but it did not discharge. Hafen did not know if he pulled the trigger, but Griffin immediately began examining the gun, ejecting unspent cartridges in the process. Griffin told her it was her "lucky night" and sat in the car to more closely examine the gun under the dome light. Upon discovering that the firing pin was missing, he told Bruner that her dad was "pretty smart," apparently in reference to the missing firing pin.

Bruner drove them to the apartment of Leonard Martinez, a brother-in-law of Griffin's ex-wife. Griffin told Hafen to· "act normal." They watched television with their hosts while Bruner left for a while. Bruner returned and told Griffin that she had her "play toy." On the way back to the car, Hafen asked Griffin to release her, but to no avail. On their return to the Bacchus Highway, Griffin held between his legs a sawed-off rifle (8 mm Mauser), which Bruner had brought him. Once on the road again and after seeing the rifle, Hafen asked if she could just "eat the [rest] of the pills and not get shot at." They stopped at a 7-Eleven store, and Bruner bought two beers and a grape juice for Hafen to drink so she could take the pills. While they were driving back to the dirt road, Hafen took between 50 and 80 additional pills. They waited there for the pills to take effect. After about one-half hour, they started back to the apartment. On their return trip, the car ran out of gas. A highway patrol trooper stopped to render assistance, but someone else had already gone for gas for them. Hafen kept quiet because Griffin still had the rifle between his legs.

By the time they returned to the apartment, Hafen was drowsy so they helped her into the house. She slept on the couch while Griffin and Bruner shared an extra bed made up in the living room. Hafen asked Griffin if she could just go home and forget about it because the events of the prior evening had frightened her badly. He told her he would discuss it with Bruner. When Hafen asked the next morning to be released, Bruner replied, "It doesn't work that way."

They returned to the car and drove to a nearby store, parking near the front. While Bruner was in the store, Hafen escaped and ran into the store. She stopped a store clerk and told him someone was trying to kill her. The store clerk recalled that she was crying and shaking. According to the clerk, Hafen turned around and saw a man matching appellant's description in the doorway, and she "really started coming unglued."

The police were notified, and they stopped Bruner in the car in the vicinity. The rifle was still in the car. A police officer had earlier seen appellant in the car, but was unable to apprehend him at that time because the information relayed over the radio was incomplete.

## ATTEMPTED MURDER

■ Appellant urges that the State failed to prove the element of intent as required by statute. The applicable statutes are as follows:

U.C.A., 1953, § 76–5–202. Murder in the first degree.

(1) Criminal homicide constitutes murder in the first degree if the actor intentionally or knowingly causes the death of another under any of the following circumstances.

. . . .

(h) The homicide was committed for the purpose of preventing a witness from

testifying, or a person from providing evidence, or a person from participating in any legal proceedings or official investigation.

U.C.A., 1953, § 76–4–101. Attempt— Elements of Offense.

(1) For purposes of this part, a person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for the commission of the offense, he engages in conduct constituting a substantial step toward commission of the offense.

(2) For purposes of this part, conduct does not constitute a substantial step unless it is strongly corroborative of the actor's intent to commit the offense.

Appellant relies on *State v. Castonguay*, Utah, 663 P.2d 1323 (1983), which was also an appeal from a conviction of attempted first degree homicide. In that case, we reversed the conviction because there was no evidence that Castonguay's drunken firing of his rifle was in the direction of the officers. In effect, Castonguay's act of firing the rifle did not show that he intended to kill anyone. Hence, the firing of the rifle was not a "substantial step toward [the] commission of the offense" as required by U.C.A., 1953, § 76–4–101(2).

Evidence from which the jury could infer Griffin's intent to kill is abundant in the record. After driving to an isolated part of the valley, appellant told Hafen that "nobody uses [my] name and gets away with it." He forced her to take what would have been a lethal dose of quaaludes had they not been counterfeits. His actions after aiming the gun at her indicate that he thought the gun was operational. Two unspent .25 caliber rounds matching those that Bruner's step-father had loaded into the gun were found on the ground at the scene. Later in the evening, appellant and Bruner gave Hafen an additional 50 to 80 pills, drove back out to the Bacchus Highway and waited for the pills to kill her.

The markings on the pills are evidence that appellant believed the pills to be a lethal dosage of quaaludes. Arguably, appellant discovered that the pills were counterfeits when the initial 20 did not kill his victim. However, appellant's giving her an additional 50 to 80 pills of an unknown character is also probative of an intent to kill. The jury could have properly inferred from this evidence that Griffin intended to kill and that these actions were substantial steps toward carrying out his intent to kill the victim in order to prevent her from testifying, thus satisfying U.C.A., 1953, §§ 76–4–101 and 76–5–202.

■ Appellant argues the evidence demonstrates only an intent to terrorize the victim so that she would not testify against him regarding the burglary. However, this argument was made before the jury, and the jury concluded that the evidence demonstrated an intent to kill. This Court is removed from the jury and does not enjoy the advantages of seeing the demeanor of the witnesses and the first-hand presentation of the evidence as does the jury. As such, we will substitute our judgment for that of the jury only when the evidence is so lacking and insubstantial that reasonable men could not possibly have reached a verdict beyond a reasonable doubt. *State v. Lamm*, Utah, 606 P.2d 229, 231 (1980). "The existence of contradictory evidence or of conflicting inferences does not warrant disturbing the jury's verdict." *State v. Howell*, Utah, 649 P.2d 91, 97 (1982). The evidence outlined above is not so lacking and insubstantial as to warrant a reversal of the conviction for attempted murder in the first degree.

## AGGRAVATED KIDNAPPING

■ Appellant's contention that the evidence was insufficient to sustain a verdict of aggravated kidnapping rests entirely on his assertion that Hafen consented to go along with them throughout the ordeal. For this proposition he points to instances when Hafen could have escaped. First, appellant argues that Hafen voluntarily agreed to go partying with Bruner. Her voluntary decision to go partying, however, cannot be stretched to include giving consent to be taken to a remote place and forced at gunpoint to take an apparently

lethal dosage of pills. Appellant also points to Hafen's failure to alert the Martinezes or the highway patrol trooper of her confinement. Before going into the Martinez apartment, however, appellant ordered Hafen to "act normal." He held the sawed-off rifle between his legs when the car stalled. Although the testimony offered by the Martinezes indicates that Hafen acted jovially while there and that she had opportunity to escape, their testimony was impeached, and the jury could have disregarded it entirely. Hafen twice unsuccessfully asked to be released. Appellant's view of the facts indicates only that Hafen did not take full advantage of her opportunities to escape, but not that she consented to all that appellant and Bruner forced upon her. This is not sufficient for a reversal. *People v. Owens*, 133 Ill. App.2d 44, 272 N.E.2d 858, 860 (1971).

## CONCLUSION

The record contains abundant evidence which, if believed by the jury, sustains the jury's finding of specific intent to commit murder, to show that appellant attempted to murder his victim and to show that appellant kidnapped his victim with intent to inflict serious bodily injury. We find no reason for reversal. The verdict is affirmed.

HALL, C.J., and STEWART, DURHAM, JJ., and J. DENNIS FREDERICK, District Judge, concur.

OAKS, J., having resigned, does not participate herein; FREDERICK, District Judge, sat.