STATE of Utah, Plaintiff and Respondent,

v.

Joseph LOVATO, Defendant and Appellant.

No. 18993.

Supreme Court of Utah.

June 7, 1985.

---

Joan Watt, Salt Lake Legal Defender Assn., Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Asst. Atty. Gen., Roger S. Blaylock and Ernie Jones, Deputy Salt Lake Co. Attys., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

The defendant, Joseph Lovato, appeals from a conviction and a judgment of aggravated sexual assault, a first degree felony,

in violation of U.C.A., 1953, § 76–5–405 (1978). We affirm.

The defendant was among several people who dropped by the apartment of the complainant in the early hours of January 17, 1982. The group left the apartment after a couple of hours of talking and listening to music. About ten minutes later, the defendant returned to the apartment and asked the complainant if he could use her phone to call for a ride. The complainant let the defendant in, and the defendant made some phone calls. At this point, the facts testified to by the parties differ. The defendant's version follows.

After the defendant made some phone calls, the complainant told the defendant that she was pregnant and her boyfriend had left her. The complainant then went to the bathroom and returned wearing only a white jersey and black panties and invited the defendant into the bedroom. By mutual consent, they had sexual intercourse, during which the defendant remained dressed.

During intercourse, the defendant's pocketknife fell out of his pocket. The complainant found the knife in the bed and gave it to the defendant.

After intercourse, the defendant and the complainant turned on the television and talked. At about 6:00 a.m., the defendant helped the complainant find the phone number of her "father" in the phone book. While the complainant was talking to her "father," who was actually an older friend of the complainant's, the defendant fell asleep on the bed.

The complainant's testimony about these events differs in all of the material specifics. She testified as follows:

After the complainant let the defendant in and he used the phone, she requested that he leave. At that point, the defendant grabbed the complainant by the throat and put his open pocketknife to her head and throat and demanded sexual intercourse. A struggle began, and during the course of it, the defendant lost his knife in the bed. He then put a towel around complainant's throat. She was ultimately unable to stop the defendant from removing her pants and forcing her to have sexual intercourse.

It is undisputed that at about 6:20 a.m., the complainant's friend arrived at the apartment and was asked by means of a written note shown through the window by the complainant to call the police. The police arrived, found the defendant asleep on the bed, and handcuffed him. Upon arresting the defendant, the arresting officer confiscated the defendant's pocketknife. Subsequently, the knife was lost by the prosecution and not placed into evidence at trial.

In counseling with a rape crisis volunteer immediately following the arrest, the complainant said that the last date on which she had engaged in sexual intercourse previous to this incident had been two days before, on January 15, 1982. Following a physical examination, the complainant was given medication to abort a possible pregnancy and to eliminate venereal disease. This was a routine procedure for alleged rape victims.

The defendant asserts that the complainant lured the defendant into consensual intercourse and fabricated a rape charge because she required medication for an abortion and for venereal disease and because she wanted to retaliate against the defendant's girlfriend for an act of vandalism she believed the latter had committed.

On appeal, the defendant raises four issues: first, whether the trial court's exclusion of the evidence of the complainant's last sexual intercourse prior to the incident was prejudicial error; second, whether the loss by the prosecution of the defendant's pocketknife was a violation of due process as a deliberate suppression or destruction of material evidence; third, whether there was insuffficient evidence as a matter of law to sustain the conviction; and fourth, whether the trial court properly instructed the jury as to the applicable law concerning consent and alleged inconsistent statements made by the complainant.

## I

The defendant argues that the evidence that complainant had intercourse within forty-eight hours of the incident was relevant to the issues of consent and her credibility, and this relevancy outweighed any risk of undue prejudice or confusion of the issues. The defendant further argues that the failure to admit this evidence inhibited his opportunity to establish the complainant's motive to testify falsely and to otherwise cross-examine her, which violated the defendant's right to confront the witnesses against him, thereby depriving him of due process of law.

In *State v. Johns,* Utah, 615 P.2d 1260 (1980), we set forth the following rule, which is also applicable in the instant case:

> While the balancing of the probative value of the evidence and its detrimental effect is entrusted to the discretion of the trial judge in the usual case such evidence, either of general reputation or specific prior acts, is simply not relevant to any issue in the rape prosecution *including the consent of the prosecutrix.* Such evidence is admissible only when the court finds under the circumstances of the particular case such evidence is relevant to a material factual dispute and its probative value outweighs the inherent danger of unfair prejudice to the prosecutrix, confusion of issues, unwarranted invasion of the complainant's privacy, considerations of undue delay and time waste and the needless presentation of cumulative evidence.

However, absent circumstances which enhance its probative value, evidence of a rape victim's sexual promiscuity, whether in the form of testimony concerning her general reputation or testimony concerning specific acts with persons other than defendant is ordinarily insufficient-

ly probative to outweigh the highly prejudicial effect of its introduction at trial. *Id.* at 1264 (footnotes omitted; emphasis added).

■ An examination of the facts in the present case precludes a conclusion that the circumstances surrounding the incident enhance the probative value of the complainant's prior consensual intercourse. The complainant did not know the defendant prior to the morning of the incident.[1] The defendant admitted the commission of sodomy and sexual intercourse, thus there was no need to admit evidence of the complainant's last intercourse to explain the presence of semen. The specific act of sexual intercourse that the defendant sought to introduce into evidence occurred just two days prior to the incident in question, which, because of the short interval, minimizes rather than enhances the defendant's theory that the complainant thought she was pregnant and fabricated her accusations in order to obtain medication to induce an abortion. Her statement to the defendant that she was pregnant was explained by her testimony that she told the defendant she was pregnant during the course of the assault so that the defendant would not "throw" her around.

Under these circumstances, evidence of the complainant's last consensual intercourse was not relevant to the issue of her consent. We conclude, therefore, that the trial judge did not abuse his discretion in excluding that evidence.

■ Regarding the contentions that the defendant was denied the opportunity to challenge the complainant's credibility and that he was denied his constitutional right of confrontation, *Johns* is also controlling. There we said, "[T]he Sixth Amendment right to confrontation requires only that the accused be permitted to introduce all relevant and admissible evidence." And

---

1. *See State v. Howard,* Utah, 544 P.2d 466, 469–70 (1975), in which we said that where the evidence tends to show a totally unwelcomed intrusion such as the gaining of entry into a room by some form of trick or deception, coupled with a subduing by force or threats, any probative value of the reputation for morality of a victim is insufficient to outweigh the negative factors in permitting an inquiry into her moral character. In the instant case, the defendant gained entry into the apartment by the device of asking to use the telephone. His actual design as found by the jury was to gain entrance and sexually assault the complainant.

"the law does not and should not recognize any connection between the veracity of a witness and her sexual promiscuity." *Id.,* 615 P.2d at 1264 (footnotes omitted). The defendant's theory of fabrication does not remove the instant case from these rules. The defendant was not denied his right to confront the complainant and challenge her veracity. A long and thorough cross-examination was conducted of the complainant by the defendant's counsel. In addition, the defendant himself took the stand. In both contexts, the defendant had an opportunity to attack the credibility of the complainant. Indeed, the defendant thoroughly developed, through his testimony, his theory that the complainant was pregnant, that she transmitted venereal disease to him, and that she was angry at the person supposed to be his girlfriend. This testimony contradicted the complainant's testimony and directly challenged her veracity. Because the date of her last consensual intercourse was not relevant to any issue in the trial, as discussed above, its exclusion did not deprive the defendant of a constitutional right.

## II

The defendant also contends that his due process rights were violated by the State's failure to preserve his pocketknife for admission into evidence at trial. He specifically argues that the knife was material to the case, that there was a reasonable possibility that the admission of the knife would have tended to exculpate him, and that it is likely that admission of the knife would have had a significant impact on the jury.

■ In *State v. Stewart,* Utah, 544 P.2d 477 (1975), we said, "[A] deliberate suppression or destruction of evidence by those charged with the prosecution, including police officers, constitutes a denial of due process *if the evidence is material* to guilt or innocence of the defendant in a criminal case. . . ." *Id.* at 479 (emphasis added). We clarified this proposition in *State v. Nebeker,* Utah, 657 P.2d 1359 (1983), where we said, "The materiality required to reverse a criminal conviction for suppression or destruction of evidence as a denial of due process is more than evidentiary materiality." *Id.* at 1363. Rather, it must be *"material in the constitutional sense." Id.* (emphasis added). Constitutional materiality requires that there be a showing that the suppressed or destroyed evidence is vital to the issues of whether the defendant is guilty of the charge and whether there is a fundamental unfairness that requires the Court to set aside the defendant's conviction. *Id.* A corollary of this proposition is, "The mere *possibility* that an item of undisclosed information *might* have helped the defense, or *might* have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 109–10, 96 S.Ct. 2392, 2400–2401, 49 L.Ed.2d 342 (1976) (emphasis added); *accord Nebeker,* 657 P.2d at 1363.

■ Applying the standard of constitutional materiality, we conclude that the defendant is not entitled to a reversal because of the loss of the pocketknife by the prosecution. As the defendant correctly points out, the existence and the use of a knife is material to the case because the charge of aggravated sexual assault, rather than rape, stems from the use of the knife. But in light of the record, the production and admission into evidence of the knife was not material in the constitutional sense. The existence and specific appearance of the knife was undisputed. The arresting officer described it in detail, and the defendant did not disagree with or modify that description. The complainant testified that she was threatened with the knife: "He just put it up against my temple first and then he put it against my throat and he told me that he wanted to have sex, you know, and that if I didn't do what he said he was going to cut me. . . ." The defendant was at liberty to make any arguments he wished to the jury regarding the likelihood that a knife of that size and description would actually be used in an assault as described by the complainant. The defendant denied any such use. In addition, an examination of the record fails

to show any fundamental unfairness that would require the Court to set aside the defendant's conviction.

## III

The defendant asserts that a careful consideration of the evidence in this case establishes that the complainant's story is so inconclusive and inherently improbable that reasonable minds could not find beyond a reasonable doubt that he committed the offense. In support of this argument, the defendant relies on five specific portions of the complainant's testimony. In analyzing these five portions of the testimony, we note the standard of review to be applied in determining whether there was insufficient evidence is as set forth in *State v. Petree*, Utah, 659 P.2d 443 (1983):

> [W]e review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently *inconclusive* or inherently *improbable* that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.

*Id.* at 444 (emphasis added).

The defendant first asserts that the testimony concerning the knife was too inconclusive to permit any inference that the complainant submitted to sexual intercourse because she was frightened by the knife. The defendant testified that the knife was small and had a dull blade that functioned better as a tool for cleaning nails or tightening screws than as a knife. The defendant also emphasizes the complainant's testimony that during the incident the defendant lost the pocketknife in the bed and the complainant subsequently found the knife and returned it to him.

▮▮ The defendant fails to point out, however, that the arresting officer described the knife as being a standard pocketknife with a two-inch blade. In addition, the complainant testified that the knife was lost in the struggle to pull off her clothes

and, once the knife was lost, "[h]e grabbed a towel and he put it around my throat...." Further, the complainant was 5'4" tall and weighed 103 pounds. One of the arresting officers described the defendant as a "pretty good-sized guy" and testified that because of his size, the two arresting officers had had trouble helping the defendant stand up from lying on the bed while he was handcuffed. In response to the question, "Why did you submit to sexual intercourse?" the complainant testified, "Because he threatened my life." In light of all these circumstances, we fail to see how the defendant's description of the knife and the complainant's action of returning the knife makes the complainant's assertion that she feared serious bodily injury inconclusive or inherently unbelievable. It is the jury's duty to resolve all questions regarding the reliability of the testimony, and the jury obviously believed that of the complainant. We may not substitute our judgment of credibility for the jury's.

The defendant's second assertion is that, absent any bruising, the complainant's testimony regarding physical violence is inherently improbable. He argues that there were no observable bruises after the incident on her arms, legs, back, head, or torso to corroborate her testimony that the defendant threw her against the floor, the wall, and the headboard. The defendant also points out that no knife marks were found on her, nor was her clothing cut. Again, an examination of the record shows that the defendant's argument is without merit. The post-rape examination did show evidence of trauma: the complainant had two red marks on her neck and a bruise on her lip. The attending physician testified that the marks on the complainant's neck were consistent with fingermarks made by someone grabbing her by the throat, and the bruise on her lip was consistent with being hit in the face. The physician also testified that the severity of the bruising depends on the degree of physical violence. Accordingly, every event of physical violence will not result in significant bruising.

▮ Third, the defendant asserts that the complainant's testimony at trial about the place in her apartment where she was threatened with the knife was inconsistent with her statements to the arresting officer; therefore, her testimony is "inconclusive." This argument is frivolous. The material issue is whether she was threatened with a knife, not whether she effectively communicated the exact location in a small apartment where she was first threatened with the knife. The only other relevance of this argument is to credibility, and the jury was entitled to reach its own conclusions about the significance of any inconsistencies in the complainant's statements.

▮ Fourth, the defendant argues that the failure of the complainant to attempt escape or to cry for help when opportunities presented themselves adds to the improbability of her version of the incident. A similar argument was made in the recent attempted murder and kidnapping case of *State v. Griffin*, Utah, 685 P.2d 546 (1984). There the appellant unsuccessfully argued that there was insufficient evidence to sustain a verdict of aggravated kidnapping because, in essence, the failure of the victim to escape implied consent to the kidnapping ordeal. This argument was also made in *State v. Studham*, Utah, 572 P.2d 700 (1977). There we said, "[The] mere failure to make an ... outcry does not render a conviction unsupportable," and "[w]hether an outcry should have been made, depends upon how practical and effective it might have been." *Id.* at 702. Similar to those cases, we conclude here, after a detailed examination of the facts highlighted by the defendant, that the defendant's argument is unpersuasive. *See id.* at 701–02; *Griffin*, 685 P.2d at 549–50. The complainant testified repeatedly that she was unacquainted with her neighbors and she believed she could not find help on the street. As she testified, instead of screaming or running, which might have compounded the risk of harm from the defendant, she protected herself from further violence after the rape by creating a false atmosphere of trust while she called a friend for assistance.

▮ Finally, the defendant argues that his actions demonstrate the inherent implausibility of the complainant's story. He points to his testimony that he helped her find the phone number of the person who eventually called the police and that he slept peacefully until the time the officer placed the handcuffs on him. Again, the real issue is credibility. The record shows that the complainant testified that the defendant watched her find the telephone number so that she would not call the police. She also testified, as noted above, that she did not feel she could find refuge in the immediate vicinity of her apartment and, in addition, that she was concerned that if she had attempted to leave, the defendant would have been awakened by the sounds made when the ill-fitting apartment door was opened. Her story was further corroborated by the accounts of the arresting officer and her friend of her behavior and communications upon their arrival at her apartment.

## IV

The defendant argues that he was precluded from presenting his theory of the case by the trial court's failure to instruct the jury on (1) the difference between "consent" and "against the will" and (2) the factors a jury may wish to consider in deciding the issue of consent. He further argues that the instruction on the consent element as given to the jury served as an improper comment on the evidence. We conclude, however, that the jury was properly instructed on the relevant law, and the defendant's proposed instructions were properly refused.

The defendant requested the following instruction, which was refused:

### Proposed Instruction "A"

An act of sodomy or sexual intercourse is without the consent of the victim when the actor compels the victim to submit or participate by force that overcomes such earnest resistance that her age, strength

of body and mind make it reasonable for her to do under the circumstances; or by any threat that would prevent resistance by a person of ordinary resolution. Such force or threats need not be limited to physical violence but may also include psychological and emotional stress or a combination of all three. Furthermore, it is not necessary to show that the victim engaged in heroics or subjected herself to great brutality or suffered or risked serious wounds or injuries.

The law recognizes a number of factors which should be considered to determine if a sexual act was performed with or without the consent of one of the parties. One factor is evidence of marks or bruising on either party reflecting actual physical violence. Another factor is the opportunity to escape or whether the victim made an outcry. These can be reflected in the time of day of the incident, the isolated location of the incident, the possible sources of assistance in the sexual activity to the victim and any active participation by the victim. Likewise, the ease of assertion of the forcible accomplishment of the sexual act with the attendant difficulties of defending against such an assertion, and the proneness of the victim to assert force or violence when she realizes that her activities are likely to be discovered may also be considered. These factors and any which you may find in the evidence or lack thereof, can be considered by you in determining whether or not the victim consented to the sexual acts alleged to have occurred.

The trial court also refused the following instruction offered by the defendant:

### Proposed Instruction "B"

The essential element in rape is the forcing of intercourse upon a woman "without her consent" and "against her will." These terms do not mean the same thing because such an act might occur in circumstances which would be "without her consent" but which would not necessarily involve overcoming her will and her resistance, both of which

must be proved. If one of these elements has not been proven beyond a reasonable doubt, then you must find the defendant not guilty of rape.

The jury was instead instructed with the following instructions that cover the same elements dealt with in the defendant's proposed but rejected instructions:

### INSTRUCTION NO. 13

You are instructed that sexual intercourse occurs "without consent" under any one of the following situations:

1. When the actor compels the victim to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or

2. The actor compels the victim to submit or participate by any threat that would prevent resistance by a person of ordinary resolution.

### INSTRUCTION NO. 14

In determining whether the victim's will and resistance were overcome, it is appropriate to consider that this may be accomplished by either physical force and violence or by psychological or emotional stress imposed upon her, or by a combination of them. As to the degree of resistance required: The victim need do no more than her age and her strength of body and mind make it reasonable for her to do under the circumstances to resist. It is not necessary that it be shown that she engaged in any heroics or that she otherwise risked the assailant's brutality or infliction of serious wounds or injuries.

 The elements of the law as set forth in the first paragraph of the defendant's Proposed Instruction "A" are also adequately set forth in Instructions No. 13 and No. 14. The second paragraph of the defendant's Proposed Instruction "A," however, is unacceptable. It directs the jury to consider the lack of bruising, the opportunity of escape, and the possible advantage to the complainant in consenting to intercourse. In the context of the specific

evidence relating to these items, the "factors" propounded by the defendant would have unduly emphasized portions of the testimony and would have been an improper comment by the judge on the evidence. *See State v. Schoenfeld*, Utah, 545 P.2d 193, 196–97 & n. 8 (1976); *State v. Sanders*, 27 Utah 354, 362, 496 P.2d 270, 275 (1972). Instead of highlighting this evidence, Instruction No. 3 given by the trial judge properly directed the jury to "carefully and conscientiously consider and compare all of the testimony, and all of the facts and circumstances which have a bearing on any issue, and determine therefrom what the facts are."

▆▆▆ The second paragraph of Proposed Instruction "A" also includes the warning that the charge of rape is easily made and difficult to defend against. We have held that a defendant is not entitled to such an instruction. *State v. Studham*, Utah, 572 P.2d 700, 702 (1977). In *Studham*, we observed that such an instruction is not favored because it is a directive to the jury as to how it should view the evidence. *Id.* Accordingly, the trial judge properly refused this instruction.

▆▆▆ The defendant also asserts that by refusing to give Proposed Instruction "B" the trial court failed to make it clear to the jury that forcing sexual intercourse upon a woman "without her consent" or "against her will" are two distinct concepts as discussed in *Studham*, 572 P.2d at 702. We find no reversible error in disregarding Proposed Instruction "B." Instruction No. 13 adequately informed the jury of the meaning of sexual intercourse without consent as defined by U.C.A., 1953, § 76–5–

402(1) (Supp.1981). Instructions No. 13 and No. 14 also adequately summarized the distinction between "without her consent" and "against her will." The notion surrounding this distinction is that sexual intercourse can occur without the victim's consent yet not involve overcoming her will by *force*. This is embodied in Instruction No. 14, which instructs the jury that *either* force or threat may be used to overcome the victim's resistance.

The final error asserted by the defendant is that the rejection of the following proposed jury instruction was reversible error.

### Proposed Instruction "C"

You are instructed that if a witness has made statements prior to the trial which are inconsistent with the testimony at trial, and that at the time of his prior statements he had adequate opportunity to perceive the event or condition his prior statements narrates, explains, or describes [sic], you may consider such prior statements to be substantive evidence in this case of the truth of those prior statements and that the declarant of such statements has spoken falsely either at the trial or on that prior occasion.

▆▆▆ The defendant argues that this instruction was necessary to instruct the jury on how to deal with the alleged inconsistent statements of the complainant and that those statements could have been considered as substantive evidence, as well as evidence concerning the complainant's credibility. We disagree. The following adequately instructed the jury on resolving conflicts in evidence: [2]

2. This subject was also dealt with in the preliminary jury instructions. The following specifically addressed the problem of inconsistencies between a witness's testimony and his prior statements:

As jurors, you have the sole and exclusive duty to decide the credibility of the witnesses who will testify in this case, which simply means that it is you who must decide whether to believe or disbelieve a particular witness and how much weight, if any, to give to the testimony of each witness. In determining these questions, *you may consider anything*

*which tends to prove or disprove the truthfulness of his testimony, including the following items:* The conduct, attitude and manner of the witness while testifying; whether the facts testified to by him are inherently believable or unbelievable; his physical and mental capacity to hear or see that about which he testifies; and *his ability to recollect or to relate such matters here in Court;* whether he has a bias, prejudice, interest or other motive for not telling the truth; and *any statements previously made by him that are consistent with*

### INSTRUCTION NO. 3

Where there is a conflict in the evidence you should reconcile such conflict as far as you reasonably can. But where the conflict cannot be reconciled, you are the final judges and must determine from the evidence what the facts are. There are no definite rules governing how you shall determine the weight or convincing force of any evidence, or how you shall determine what the facts in this case are. *But you should carefully and conscientiously consider and compare all of the testimony, and all of the facts and circumstances, which have a bearing on any issue, and determine therefrom what the facts are.*

(Emphasis added.) In addition, considering in their entirety the instructions ultimately given to the jury, we conclude that excluding Proposed Instruction "C," as well as "A" and "B," did not deny the defendant a fair trial. *See State v. Brooks,* Utah, 638 P.2d 537, 542 (1981).

Accordingly, the jury conviction is affirmed.

HALL, C.J., and HOWE and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.

*any part of his testimony, or on the other hand are inconsistent with such testimony....*