**STATE of Utah, Plaintiff and Appellee,**

v.

**Reginald WILLIAMS, Defendant and Appellant.**

No. 870095.

Supreme Court of Utah.

May 5, 1989.

Karen Stam, Joan C. Watt, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Barbara Bearnson, Salt Lake City, for plaintiff and appellee.

HALL, Chief Justice:

Defendant Reginald Williams appeals from his convictions for three counts of aggravated sexual assault in violation of Utah Code Ann. § 76–5–405 (Supp.1988), one count of aggravated robbery in violation of Utah Code Ann. § 76–6–302 (1978), and one count of being a habitual criminal in violation of Utah Code Ann. § 76–8–1001 (1978). He was sentenced to three ten-year-to-life terms for the aggravated sexual assault convictions and one five-year-to-life term for the aggravated robbery conviction, all terms to run concurrently, as well as a consecutive term of five years to life for being a habitual criminal.

At trial, the victim testified that she was awakened in the night by defendant, who threatened her, tied her up, beat and injured her, and sexually assaulted her orally, anally, and vaginally. Defendant then fell asleep and in the morning demanded one hundred dollars. The victim testified that she gave defendant twenty dollars and promised to return with the balance. She left her apartment, called the police from a convenience store, and then returned to her apartment with the police. There officers found defendant in the apartment with the twenty dollars.

Defendant testified differently. He claimed that he encountered the victim the night of the incident at a convenience store several blocks from her home. She asked him to come home with her and have sex and promised $100.00 in return. Defendant accepted, went to the victim's apartment, and engaged with the victim in two acts of vaginal intercourse, although he did not ejaculate. He explained that the victim's injuries were the result of a fall she took in the bathroom, a fight with defendant that occured when she awoke in the night and mistook him for her husband, and blows defendant inflicted in the morning when she refused to pay him the money promised. After the latter event, the vic-

tim promised to get the remainder of the money, left the apartment, and returned a short while later with the police.

I

Prior to trial, the court granted a motion *in limine* preventing defendant from inquiring into the victim's sexual activity the same night as her contact with defendant. Defendant contends that the trial court committed prejudicial error in refusing to allow this inquiry.

Defendant proffered testimony outside the presence of the jury indicating that on the night of the incident, the victim and a neighbor had driven up Millcreek Canyon and engaged in intercourse. Upon their return to the city, the neighbor left the victim in the proximate area and at the proximate time defendant claimed he met her.

On at least one occasion, the neighbor indicated to investigating officers that he "dumped" the victim off so that his live-in girlfriend would not see them together. Twice the victim was untruthful about the episode with her neighbor. She told a rape crisis counselor that it had been a "long time" since she had last engaged in coitus when it had only been a matter of hours, and she suggested to an investigating officer that on the night in question, she walked eighteen blocks from her son's home to her apartment rather than that she walked only a short distance to her apartment after she returned from the canyon.

Defendant claims that the exclusion of this evidence constitutes reversible error and denied him his constitutional right to confront the witnesses against him. He asserts that evidence of the victim's prior consensual intercourse is relevant, material, and essential to proving his theory of the case and would have established (1) that the victim had motive to behave as defendant testified and she consented to sexual relations with him, (2) that the victim lied to authorities about her earlier encounter and thus lacked credibility, and

(3) that the victim's prior sexual activity provided an alternative explanation for the semen that was found in her anal area.

■ We initially deal with defendant's first two claims, that the evidence was admissible to show that the victim had a motive to behave as he testified and she consented to relations with him and that the evidence was admissible to disrepute the victim's credibility. When the trial court granted the State's motion *in limine* preventing defendant from inquiring into the victim's sexual activity, it explained:

> I'm not sufficiently convinced that such testimony, if elicited, goes to the credibility of the witness in question.
>
> Secondly, in my mind, it's not relevant to any claim of consent. It is an isolated act that we're talking about. Furthermore, even if it were relevant, either [to] consent or credibility, I think that its probative value is substantially outweighed by the danger of prejudice and confusion of the issues. It really is an unwarranted invasion of the private life of the alleged victim here.

It was the trial court's belief that the evidence was not relevant to the issue of consent or credibility. Evidence that is not relevant is not admissible at trial.[1] Rule 401 of the Utah Rules of Evidence provides that for evidence to be relevant, it must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence of a victim's prior sexual encounters is generally not relevant in a prosecution for rape. In *State v. Johns*,[2] we noted that "in the usual case such evidence, either of general reputation or specific prior acts, is simply not relevant to any issue in the rape prosecution including the consent of the prosecutrix."[3]

Even were we to assume that the evidence was relevant or, more likely, marginally relevant, rule 403 of the Utah Rules of Evidence provides that in some cases, relevant evidence may be excluded. In *Johns*, we explained:

> Such evidence is admissible only when the court finds under the circumstances of the particular case such evidence is relevant to a material factual dispute *and* its probative value outweighs the inherent danger of unfair prejudice to the prosecutrix, confusion of issues, unwarranted invasion of the complainant's privacy, considerations of undue delay and time waste and the needless presentation of cumulative evidence.
>
> However, absent circumstances which enhance its probative value, evidence of a rape victim's sexual promiscuity, whether in the form of testimony concerning her general reputation or testimony concerning specific acts with persons other than defendant is ordinarily insufficiently probative to outweigh the highly prejudicial effect of its introduction at trial.[4]

This Court will not disturb a trial court's ruling on the admissibility of evidence "unless it clearly appears that the lower court was in error."[5]

In deciding whether evidence should be excluded under rule 403, the trial court must determine whether the evidence has probative value and, if so, whether that probative value is substantially outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumu-

---

1. Utah R. Evid. 402.

2. 615 P.2d 1260 (Utah 1980).

3. *Id.* at 1264.

4. *Id.* (emphasis added; footnotes omitted); *State v. Moton,* 749 P.2d 639, 643–44 (Utah 1988); *see State v. Lovato,* 702 P.2d 101, 105–06 (Utah 1985).

5. *State v. Gray,* 717 P.2d 1313, 1316 (Utah 1986) quoted in *Whitehead v. American Motors,* No. 19695, slip op. at 3, —— P.2d ——, —— (Utah Feb. 2, 1989).

lative evidence." [6] To ascertain the probative value of proffered evidence, the trial court should not substitute its assessment of the credibility of the evidence for the jury's.[7] However, the court must necessarily measure the strength of the evidence and its ability to make the existence of a consequential fact either more or less probable.[8] Thus, to establish the strength and ability of the evidence of the victim's consensual intercourse to prove poor credibility, the trial court prudently considered the reasons behind the victim's lapse of integrity. She testified to the court that she was embarrassed by the rendezvous with her neighbor because (1) she was a married, albeit separated, woman, (2) the intercourse was the first that she and her neighbor had engaged in during their two- and one-half-year relationship, and (3) her son was privy to the police interview when she lied about walking home and he accompanied her to the hospital, although he was not immediately present, when she lied about her last coitus. The victim, on her own volition, notified authorities and confessed to the lies. These circumstances add credence to the court's decision that the probative value of evidence of the victim's prior consensual intercourse was outweighed by its prejudicial effect.

While evidence of the victim's prior act of intercourse was excluded, defendant was allowed to cross-examine her about her being dropped off in the area where defendant claims he was propositioned. He was allowed to show that the opportunity existed for the two to meet and that the facts could be as he claimed. He was permitted to cross-examine the victim about some of her inconsistent statements to the police, and his own testimony substantially contradicted that of the victim. Defendant was not barred from presenting and supporting his theory of the case or exposing the fact that the victim lied and may have lacked credibility. His cross-examination was granted a judicious tether, but was properly restrained to elicit that which was relevant.[9]

▉ Defendant also claims that evidence of the victim's prior act of consensual intercourse was admissible to show an alternative explanation for the semen that was found in an examination of the victim's anal area. He notes that the evidence of the semen was used to convict him of one count of aggravated sexual assault (for anal rape) and yet a material issue existed as to who was responsible for depositing the fluid. Evidence presented at trial established that the presence of the semen was consistent with, but not conclusive evidence of, anal intercourse since the fluid could have drained from the victim's vagina. Evidence proffered to the court indicates that the depositor could have been defendant, the victim's neighbor, or someone else. Defendant claims that it was error to admit evidence of semen in the victim's anal area that was used to convict him while excluding evidence that provided an equally plausible alternative explanation for the fluid's presence.

It is possible in some cases that evidence of a victim's prior consensual intercourse may be relevant and admissible to explain the presence of semen in a rape victim, particularly when the defendant denies that he had intercourse with the victim and the victim's consensual partner is a possible source of the fluid.[10] However, this is not one of those cases.

Defendant admitted having vaginal intercourse with the victim, and while he denied

**6.** Utah R. Evid. 403.

**7.** *State v. Branch,* 743 P.2d 1187, 1190 (Utah 1987), *cert denied,* —— U.S. ——, 108 S.Ct. 1597, 99 L.Ed.2d 911 (1988).

**8.** 1 G. Joseph, S. Saltzburg, and Trial Evidence Committee of the American Bar Association Section on Litigation, *Evidence in America: The Federal Rules in the States* § 13.3 at 2 (1987); *cf.*

Utah R. Evid. 104(a) (questions of admissibility to be determined by the court).

**9.** *See generally Olden v. Kentucky,* —— U.S. ——, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988).

**10.** *Cf. Lovato,* 702 P.2d at 105.

ejaculating, it is not beyond the ken of the ordinary juror to know that semen may be discharged during coitus prior to ejaculation. It is possible that the fluid in the victim's anal area was defendant's semen that drained from the victim's vagina. However, whether the fluid was or was not defendant's, its presence in the victim's anal area is weak evidence of anal intercourse, given the testimony that the fluid's presence could be explained by drainage. Admission of weak evidence of anal intercourse does not justify admission of prejudicial, confusing, and invasive evidence of the victim's consensual relations. Furthermore, the evidence of semen in the victim's anal area is not the primary evidence that was used to convict defendant of anal rape. More ruinous to defendant's case was the victim's own testimony,[11] which was generally corroborated by evidence found at the scene (the victim's cut nightgown, bloody bed sheets, a knife, a possible method of entry into the victim's apartment, paraphernalia in and near defendant's gym bag that could have facilitated a rape, including cords, gloves, and a packet containing a lubricant), and the victim's physical condition (manifested by bruises, a broken nose, and a crushed esophagus that defendant's testimony could not explain). Finally, in determining the strength and ability of evidence of the victim's consensual intercourse to prove a possible alternative explanation for the semen in the victim's anal area, the court could consider the uncontroverted testimony that the victim's neighbor had had an apparently successful vasectomy and could not be the source of the semen. We find no clear error in the trial court's ruling that the probative value of

evidence of the victim's consensual intercourse was outweighed by its prejudicial effect.

 We now turn to defendant's claim that the exclusion of evidence of the victim's consensual intercourse denied him his rights under the federal and state constitutions to confront the witnesses against him.[12] The sixth amendment right to confrontation is an important but not absolute right. In *Delaware v. Van Arsdall*,[13] a case where the defendant claimed the trial court denied his right to impeach the witness for bias, the United States Supreme Court stated:

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.[14]

This same principle applies here. We have indicated that "the Sixth Amendment right to confrontation requires only that the accused be permitted to introduce all *relevant and admissible* evidence."[15] In this case, evidence of the victim's prior consensual intercourse was not relevant to prove consent or challenge the victim's credibility. While the evidence of consensual intercourse may have been marginally relevant to show an alternative explanation for the presence of semen in the victim's anal area, it does not clearly appear that the trial court erred since the potential prejudicial effect of the evidence outweighed its probative value.

---

11. *See State v. Studham,* 572 P.2d 700, 701–02 (Utah 1977) (testimony of a victim of a crime is sufficient to sustain conviction).

12. U.S. Const. amend. VI; Utah Const. art. I § 12. Although in raising his claims defendant relies on both the federal and state constitutions, he does not specifically argue that the federal and state analyses differ. Therefore, we treat defendant's claims as based only on federal constitutional provisions. *See State v. Lafferty,* 749 P.2d 1239, 1247 n. 5 (Utah 1988); *State v. Ashe,* 745 P.2d 1255, 1257 n. 2 (Utah 1987).

13. 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

14. *Id.* at 679, 106 S.Ct. at 1435.

15. *Johns,* 615 P.2d at 1264 (emphasis added) (citing *United States v. Kasto* 584 F.2d 268, 272 (8th Cir.1978)).

Despite the exclusion of evidence concerning the victim's prior consensual intercourse, this is not a case where the trial court prohibited *all* inquiry into the possibility that the victim lacked credibility [16] or that the facts could have been as defendant claimed. Defendant's counsel cross-examined the victim, and defendant took the stand and developed his theory of the case. In both contexts, defendant had an opportunity to attack the credibility of the complainant and challenge her veracity.[17] The exclusion of evidence of the victim's consensual intercourse did not deprive defendant of his constitutional confrontation rights.

## II

■ Defendant next claims that his status as a parolee twice reached the jury, prejudicing his trial. He argues that the lower court erred in denying his motions for a mistrial and a new trial.

Defendant contends that he was first prejudiced when a juror noticed part of a newspaper headline that read, "Trial Begins for Parolee, Accused of Sex Assault, Robbery." The second incident of alleged prejudice occurred when defense counsel on cross-examination asked the victim's son whether prior to trial he had read to the victim her written statement. His answer was, "No. As soon as the document was notarized, it was taken to the parole officer who was asking for it."

In the first instance, the court thoroughly interviewed the juror and found that she did not read the whole headline and could only remember the words " 'sexual [sic] assault and robbery.' " The juror told the court that she could fairly, impartially, and dispassionately decide the case from only the evidence presented at trial, that she could accept the instructions of the court, and that she could apply the law as the

court instructed. In the second instance, the trial court felt that the statement was lost on the jury and noted that it observed no visible reaction of the jurors to the testimony. No reference was made to either defendant or any of his previous crimes, and it was not clear that the parole officer referred to was defendant's. The jury was generally instructed that it was to consider only evidence introduced at trial and that it was not to be governed by conjecture.

Rule 30(a) of the Utah Rules of Criminal Procedure requires, "Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." Defendant's claim fails as his substantial rights were not affected.

## III

■ Defendant further contends that the trial court erred in finding him to be a habitual criminal since the State failed to establish that he was represented by counsel at previous trials where he was convicted. Defendant's contention, however, misconstrues the burden which the State faces.

Utah's habitual criminal statute requires that to be convicted of being a habitual criminal, a person must have been convicted, sentenced, and committed for two prior felonies, at least one of which was a felony of the second degree.[18] Defendant claims "that the State also has the obligation to prove that the prior convictions were obtained when the defendant was represented by counsel." The State has no such obligation. In *State v. Triptow*,[19] we held:

> [W]hen a defendant is charged as an habitual criminal, the State bears the burden of proving the prior conviction, sentencing, and commitment as required by section 76-8-1001. A previous judgment of conviction so proven is entitled to a presumption of regularity, including

16. *See Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435.

17. *See Lovato*, 702 P.2d at 106.

18. Utah Code Ann. § 76-8-1001 (1978).

19. 770 P.2d 146 (Utah 1989).

a presumption that the defendant was represented by counsel. This presumption satisfies any initial burden the State may have of proving that the defendant had or knowingly waived counsel. After proof of the previous conviction is introduced, the burden is on the defendant to raise the issue and produce some evidence that he or she was not represented by counsel and did not knowingly waive counsel. Once the defendant has presented some evidence, the presumption of regularity is rebutted and the burden shifts to the State to prove by a preponderance of the evidence that the defendant was in fact represented or knowingly waived representation.[20]

At trial, the State introduced two documents entitled "JUDGMENT, SENTENCE AND COMMITMENT TO UTAH STATE PRISON UPON PLEA OF GUILTY," which indicated that defendant previously pleaded guilty and was convicted of criminal homicide and aggravated assault. At trial, defendant did not object to these documents on the ground that they were inadmissible, but he did object to them as being insufficient indicia that he was represented by counsel when he entered his pleas. Applying the rule in *Triptow*, however, the State met its initial burden of proving that defendant had counsel. Defendant, on the other hand, failed to produce rebuttal evidence that he was not so represented. Thus, we accept the presumption that defendant's prior convictions occurred while he was represented by counsel and reject the argument that the State failed to establish that fact. Since defendant was twice convicted, sentenced, and committed for two prior felonies, at least one of which was a felony of the second degree, we find that he was properly determined to be a habitual criminal.

## IV

 Defendant lastly claims that he improperly received a separate and consecutive sentence of five years to life for being a habitual criminal. He asserts that this sentence violates the purpose and intent of Utah's habitual criminal statute and subjects him to double jeopardy in violation of the federal and Utah constitutions and Utah statute.[21] We agree.

Utah's habitual criminal statute does not create a new crime, but rather enhances punishment for the latest substantive offense. "Since no crime exists, there can be no sentence. Assigning a separate sentence for recidivism does more than enhance punishment for the latest crime, it penalizes an individual for past convictions." [22] Recently in *State v. Stilling*[23] and *State v. Johnson*,[24] this Court held that the sentence for being a habitual criminal should be merged with the sentence for the underlying substantive offense to create one enhanced sentence. Thus, in *Stilling* the defendant's five-year-to-life aggravated robbery sentence was merged with his five-year-to-life habitual criminal sentence to create a single sentence of five years to life for aggravated robbery and for being a habitual criminal. And in *Johnson,* the defendant's one-to-fifteen-year sentence for burglary was merged with his five-year-to-life sentence for being a habitual criminal to create one enhanced sentence of five years to life for burglary and for being a habitual criminal. Likewise, in this case defendant should receive three ten-year-to-life sentences for aggravated sexual assault and for being a habitual criminal and one five-year-to-life sentence for aggravated robbery and for being a habitual criminal. Inasmuch as the trial court indicated that the sentences for the substantive offenses should run concurrently, the enhanced sentences should also run concurrently.

We have reviewed defendant's other contentions and find them to be without merit.

20. *Id.* at 149.

21. U.S. Const. amends. IV, V; Utah Const. art. I, § 12; Utah Code Ann. § 76–8–1001 (1978).

22. *State v. Stilling,* 770 P.2d 137, 145 (Utah 1989).

23. 770 P.2d 137.

24. 771 P.2d 1071 (Utah 1989).

We vacate the sentences and remand to the trial court for resentencing consistent with this opinion.

HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.