## STATE v. ANDERSON et al.

No. 6785.   Decided April 23, 1945.   (158 P. 2d 127.)

See 23 C. J. S., Criminal Law, sec. 1325; 53 Am. Jur., 623.

*E. LeRoy Shields,* of Salt Lake City, for appellants.

*Grover A. Giles, Atty. Gen.,* and *C. N. Ottosen, Asst. Atty. Gen.,* for respondent.

WADE, Justice.

Appellants were convicted of the crime of grand larceny and appeal.

On the 12th day of June, 1944, in Ogden, Utah, at about 5:30 p. m. one Clarence Jensen had just finished eating his dinner at a place known as Bill and Bessie's Cafe and was about to leave when appellants entered this cafe. One of the appellants, Nichols, called out: "Hello, Clarence." In response to this salutation, Jensen went over to a rear booth where appellants had seated themselves and had ordered dinners. A conversation ensued between Jensen, Nichols and Anderson. Nichols observed that Jensen was wearing a leather wrist band and inquired why he was wearing it. Jensen answered he was wearing it because he had a weak wrist, whereupon Nichols stood up and took hold of Jensen's hands and turned them over back and front stating he was a chiropractor and might be able to help him. Anderson stood up and approached Jensen, entering into the conversation. Nichols asked Jensen if he had a pencil and Jensen dropped his gaze to look into his shirt pocket for one. Jensen was about to leave the cafe when he noticed his billfold was missing. He turned around and accused Nichols of having taken it. This he denied, stating that another patron of the cafe who was sitting at a counter had it. In the meantime Roberts made a hurried exit through the kitchen which was located in the back part of the establishment. A waitress sitting at a counter had seen some dark object pass between Nichols and Roberts and called out: "Bobbie has it." One of the customers ran out

after Roberts and caught her as she was taking the money out of Jensen's billfold. She managed to elude this man, place the money in her pocket and throw the billfold and its other contents away as she ran out of the kitchen and onto the street. In the meantime Jensen ran out of the front door of the cafe in an effort to overtake Roberts and while he was gone Nichols and Anderson left the cafe without waiting for their dinners to be served or paying for them. Jensen had caught up with Roberts and was holding her, demanding his money back and she was denying having it when Nichols came up and forced Jensen to release her. A short time later Roberts was arrested at her hotel and Nichols and Anderson in a tavern.

During the course of the trial the court asked the jury if it would like to ask some questions of a witness. Two members of the jury accepted this invitation. Appellants assign this invitation by the court to the jurors to ask questions as error. Appellants concede that it is not error for a court to grant permission to a juror who wishes to ask questions to clarify some material point in the evidence, but insist that it is error for the court to invite the jurors to ask such questions. Whether a juror will be permitted to ask questions of a witness is within the discretion of the trial court. *Krause* v. *State,* 75 Okl. Cr. 381, 132 P. 2d 179; *White* v. *Little,* 131 Okl. 132, 268 P. 221; *People* v. *Knapper,* 230 App. Div. 487, 245 N. Y. S. 245; *State* v. *Sickles,* 220 Mo. App. 290, 286 S. W. 432; *Stamp* v. *Commonwealth,* 200 Ky. 133, 253, S. W. 242. The fact that the trial court granted the jurors permission to ask questions of witnesses without any special request from them for this privilege does not, in our opinion, in and of itself constitute error. The determining factors as to whether error has been committed is the type of questions asked and allowed to be answered. If the questions asked are not germane to the issues involved or are such as would be clearly improper and therefore prejudical to the rights of the defendants to a fair and impartial trial, the court's allowing them to be answered would be error. As stated

in *Jones' Commentaries on Evidence*, 2nd Ed. Vol. 5, Page 4539, Sec. 2320:

"The privilege of examining witnesses is extended to jurors and may be exercised by them to draw out or clear up an uncertain point in the testimony. It has even been said that jurors should be encouraged to ask questions. They should not, however, be permitted to take the examination of witnesses out of the hands of counsel and to question witnesses at length, nor should they be permitted to interrupt the orderly conduct of the cause with unnecessary questions."

See also cases cited supra.

We have examined the record in the instant case and find that one of the jurors wanted to know what motions defendant Nichols used when he examined the prosecuting witness's hands and told him he was a chiropractor. Another juror wanted to know if the prosecuting witness was wearing a coat when he looked for a pencil defendant Nichols had asked for and what was in his pockets at that time. These questions might properly have been elicited on the direct examination of the witness and were such as would clarify material points in the testimony. The court, therefore, did not err in permitting these questions to be answered. By so holding, this court does not wish it to be understood that it approves the practice of a trial court inviting jurors to ask questions. This privilege should only be granted when in the sound discretion of the court it appears that it will aid a juror in understanding some material issue involved in the case and ordinarily when some juror has indicated that he wishes such a point clarified.

Before the commencement of the trial, counsel for defendants requested that each be granted a separate trial. Sec. 105-32-6, U. C. A. 1943, provides that:

"When two or more defendants are jointly charged with any offense * * * they shall be tried jointly * * * *"

unless the court in its discretion orders separate trials. Counsel does not contend that the court erred in refusing

the request for separate trials but argues that having so refused the court erred in failing at the time of the admission of certain evidence and in its instructions to caution the jury that evidence which was admissible against one defendant might not be competent against a co-defendant. Counsel does not point out any evidence which was admitted which was incompetent as to a co-defendant and which was prejudical to his rights to a fair and impartial trial. It does not appear that counsel requested the court to admonish the jury as to the evidence which would be introduced which might be competent as to one defendant and inadmissable as to his co-defendants. Neither does it appear that counsel requested the court to give cautionary instructions to the jury to this effect. As stated in 14 R. C. L., Instructions, Sec. 56:

"* * * The rule is therefore firmly established that where the charge of the court does not cover all phases of the case, counsel is bound to call its attention to the omission by an appropriate request or be precluded from making such failure available as reversible error * * *."

In the absence of a showing of prejudice by the admission of evidence incompetent as to a co-defendant and which admission was prejudical to such defendant, or a request for cautionary instructions because of the admission of such evidence, this court will not say it was error for the court to have failed to give such instructions.

Appellants also assign as error the giving by the court of instruction numbered 5. This instruction reads:

"If you find from the evidence beyond a reasonable doubt that the purse and contents thereof were stolen from the person of Clarence Jensen on the evening of the 12th day of June, 1944, and that the defendants were in that locality at or soon after the commission of said larceny, and that they fled from the scene of the larceny, then such flight on their part is a circumstance having a tendency to establish guilt and which may be considered by you, as members of the jury, as a circumstance bearing on the guilt of the accused."

Appellants argue that while it is true that if one flees from the scene of a crime that circumstance may be taken into consideration by the jury, it is error to say that if any of the defendants were in the locality at or soon after the commission of the offense and fled, that ■ such flight could be considered by the jury as circumstance bearing on his guilt. We agree with counsel that flight by any defendant who was in the locality soon after the commission of the offense is not a circumstance which could be taken into consideration by the jury and it was error for the court to so instruct, because it is obvious that under the facts of this case the defendants would have to be present at the time of the commission of the offense if they were to be guilty at all. However, for the same reason, we do not believe this error was prejudicial as the jury could not have been misled. There was no evidence that any defendant was not present at the time the crime was committed.

Appellants also contend that there was insufficient evidence to submit the case to the jury as to their guilt or innocence.

As to defendants Nichols and Roberts there can be no doubt there was sufficient evidence to submit to the jury. The evidence disclosed that Nichols accosted Jensen, although he was not acquainted with him, entered into a conversation, took hold of his hands and was seen ■ to pass over some dark object to defendant Roberts, who almost immediately left hurriedly through a rear door of the cafe. When Jensen was turning to leave he became aware of the fact that his billfold was missing and accused Nichols of taking it. In the meantime another customer of the restaurant ran after defendant Roberts and was in time to see her take the money out of Jensen's billfold and then discard the billfold and its other contents onto the street in back of the cafe. If the jury believed this evidence they could reasonably find the defendants Nichols and Roberts guilty of the crime of grand larceny.

As to the defendant Burrell Anderson, the strongest evidence produced against him was that he arrived in the company of his co-defendants, entered into the conversation which Nichols had started with Jensen, and at times got up from his seat in the booth and approached Jensen. After the commotion started upon the discovery by Jensen of the loss of his billfold he left the restaurant without eating or paying for the dinner which he had ordered. However, he did not leave until Jensen had run out of the cafe in pursuit of defendant Roberts. When this happened, he remarked that it looked bad for him and left through the front door.

In *State* v. *Erwin*, 101 Utah 365, 120 P. 2d 285, on page 302, this court in determining the sufficiency of the evidence in a conviction on circumstantial evidence said:

"In order to sustain a conviction, the evidence * * * must be of such persuasive force that the mind might be reasonably satisfied of all the necessary facts constituting the defendant's guilt beyond a reasonable doubt; and where the proof of a necessary fact is dependent solely upon circumstantial evidence, such circumstances must be such as to reasonably exclude every reasonable hypothesis other than the existence of such fact and be consistent with its existence and inconsistent with its non-existence. It is not necessary that each circumstance in itself establish the guilt of the defendant, but the whole chain of circumstances, taken together, must produce the required proof."

As we have shown, the only evidence against Anderson is that he was in the company of Nichols and Roberts, entered into the conversation with Jensen and left the cafe without paying for the dinner he had ordered, after Jensen had discovered his billfold was missing and had run out after Roberts. There was no evidence that defendants knew Jensen would be at the cafe when they entered it and in view of the fact that it was Nichols and Roberts who took active parts in the commission of the offense, and all Anderson did was enter into the conversation after it was started and got up once or twice and came close to Jensen, it is our

opinion that those actions and circumstances are not of such persuasive force as to satisfy a reasonable mind beyond a reasonable doubt that he was connected with the crime. His action in entering the conversation was the normal action of any person who is part of a group and is not inconsistent with innocence. The fact that he left the cafe after the commotion was under the circumstances not inconsistent with innocence and could have been due to a normal reluctance to be present where trouble was brewing.

Affirmed as to defendants Nichols and Roberts and reversed as to defendant Burrell Anderson and remanded with instructions to grant a new trial.

McDONOUGH, J., concurs.

LARSON, Chief Justice (concurring).

I concur. But I wish to emphasize that while it is proper to permit the juror to ask questions of a witness to clarify some matter in the mind of the juror, the court should never on its own motion invite the jury to question witnesses, and should at all times guard carefully the rights of the parties in permitting the witness to answer questions asked by a juror. Counsel for a party is never as free to object to a question asked by the court or by a juror as when the question is asked by opposing counsel.

I agree the giving of instruction No. 5 was error. It was objectionable in form and erroneous in substance. I agree, however, that in the instant case, it was not such prejudicial error as to require a reversal as to Nichols and Roberts. There is no dispute that defendants were at the scene of the alleged offense at the time of its claimed commission. Likewise there is evidence that Roberts fled from the scene of the crime, but there is no evidence that the other defendants fled. They certainly would not be expected to remain in a particular cafe just because a man claimed to have been robbed therein, and after the claimed victim had left. Merely leaving the cafe, with no effort to conceal oneself, or avoid being seen is not evidence of flight. The

instruction clearly intimates to the jury that leaving the cafe was flight, and had a tendency to establish guilt.

As to Roberts, her precipitate flight from the scene through the kitchen and back door even before, or immediately at the instant of the discovery of the alleged offense is sufficient to make the instruction, even though unnecessary, not prejudicial as to her. As to Nichols, there is evidence that it was he who called Jensen over to his table; who stood close to him, manipulated his wrists, caused him to occupy himself with search for a pencil, and slipped some dark object to Roberts just before she ran out; and just at that time Jensen's billfold was stolen. If the jury believed all these things, it would seem they must convict Nichols without any reference to the matter of flight, and therefore a reversal on the error is not in order.

As to Anderson, as pointed out by Mr. Justice WADE, there is not sufficient evidence to go to the jury. As to him the instruction was clearly prejudicial, and is one further reason for reversing the judgment as to him.

TURNER, J., concurs in the opinion of Mr. Justice WADE and also in the views expressed by Mr. Chief Justice LARSON.

WOLFE, Justice (concurring).

I concur but I call attention to the inclusion in the opinion of the quotation from *State* v. *Erwin*, 101 Utah 365, 120 P. 2d 285, 302. I think the first and last sentence of that quotation helpful. The middle part of the quotation stating that the

"circumstances must be such as to reasonably exclude every reasonable hypothesis other than the existence of such fact and be consistent with its existence and inconsistent with its non-existence"

is too abstruse for the ordinary jury, and from my experience has even misled judges to withhold from the jury cases which should properly have been submitted. I paid my respects to this sort of a test in my concurring opinion in

the case of *State* v. *Burch*, 100 Utah 414, 115 P. 2d 911, at page 913.

My objection is not that the test, properly understood and used, is not a valid one. In certain cases where the circumstances as to each necessary element of the crime are not of themselves anywhere near compelling as to such element, but when taken with those other transactions which give color or lend interpretation and also interlock and reinforce other groups of circumstances relating to other transactions in the history of the events which it is alleged constitute a crime, so that from the whole a definite conclusion of guilt may or may not be drawn, it may be wise to instruct the jurymen in such fashion as to cause them to parade before their minds all possibly reasonable hypotheses consistent with innocence as a method of deliberation. Such a case was *State* v. *Laub*, 102 Utah 402, 131 P. 2d 805. But even under the facts of that case I believe that less confusion would arise from the giving of an instruction that if from all the circumstances the jury had no reasonable doubt as to the guilt of the defendants, they could find them guilty; that if all the circumstances pointed concurringly to the guilt of the defendants so as to remove all doubts founded on reason, they would be justified in finding the defendants guilty.

The main objection to the test that the evidence must exclude every reasonable hypothesis lies in the phrase "reasonable hypothesis." It invites the jurymen and indeed judges (see *State* v. *Bruno*, 97 Utah 17, 85 P. 2d 795), to conjure up in the imaginations every sort of hypothesis which may be fitted into the evidence and then in the process of discarding some and retaining others the test of reasonableness is applied with great variation as to their judgment as to what is reasonable. Often in determining whether a particular explanation is or is not reasonable, judges invade the province of the jury and I fear that the method of taking up all possible hypotheses which the evidence permits and then sifting out the reasonable from

the unreasonable, those terms depending of course on the judgment of the judges, leads to such invasion.

It is odd how some abstract statement applicable when first devised as a test on the facts then in evidence persists down through the years to become an incubus on the law. There is no use of inflicting on a judge and much less on a jury a test which says that where a fact rests on circumstantial evidence alone the

"circumstances must be such as to reasonably exclude ["in every reasonable mind" should I suppose be supplied] every reasonable hypothesis other than the existence of such fact," etc.

The simple test is:

"Under all the evidence in this case can I as a judge say that no normal functioning mind applying its reasoning faculties to the evidence in the case could conclude that defendant was guilty."

If so it must be withdrawn from the jury. If the judge has doubt as to that it should go to the jury with the instruction that it, the jury, must be convinced beyond a reasonable doubt as to defendant's guilt before it should find him guilty. These are comparatively simple tests—albeit they do depend on the experience and capacity of the minds of the fact finders, a human element of uncertainty we cannot escape from. There are no absolutes in the human mind. We have no robots into which we can feed evidence, and turn a crank and get the exact, correct and perfect result. All that can be expected is human justice—that which emerges from not infallible and imperfect human beings even after every attempt to be fair and apply to the utmost their comparatively frail and limited human faculties.