**STATE of Utah, Plaintiff and Appellee,**

v.

**Danny Lee JOHNSON, Defendant and Appellant.**

**No. 870096.**

Supreme Court of Utah.

Aug. 17, 1989.

whether the legislature can authorize DSS to administratively modify a court order.

Frances M. Palacios, Lisa J. Remal, Joan C. Watt, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Barbara Bearnson, Salt Lake City, for plaintiff and appellee.

HALL, Chief Justice:

Defendant Danny Lee Johnson was convicted of attempted first degree murder and of being a habitual criminal in violation of Utah Code Ann. § 76–5–202(1)(k) (Supp. 1989), Utah Code Ann. § 76–4–101 (1978), and Utah Code Ann. § 76–8–1001 (1978). He was also convicted of using a firearm in the commission of a felony in violation of Utah Code Ann. § 76–3–203(1) (Supp.1989). He received a five-year-to-life sentence for the attempted murder and habitual criminal convictions and a consecutive one- to five-year sentence enhancement for the firearm conviction.

We recite the facts from the record in the light most favorable to the jury's verdict.[1] Early in the morning on May 27, 1986, Utah Highway Patrol Trooper Dennis Bringhurst observed a vehicle driven by defendant traveling in an erratic manner. He followed the car, eventually pulled up next to it at a stop light, made eye contact with defendant, and asked him whether he had been drinking. Defendant answered "yes." When Trooper Bringhurst directed him to pull over, defendant turned from one main thoroughfare to another, drove a distance, and then turned down a quiet side street. He stopped his car in the lane of travel.

Trooper Bringhurst parked behind defendant's car and approached the automobile on foot. He asked defendant, "Did you say you have been drinking?" Trooper Bringhurst testified that defendant smiled and replied, "It doesn't make any difference, does it?" Defendant raised a sawed-off shotgun over his lap and fired point blank at the trooper.

Trooper Bringhurst threw himself backward to escape the blast, but a share of the burst struck the right side of his face. He drew his revolver and returned five shots. One grazed defendant's cheek, and another

---

1. *State v. Verde,* 770 P.2d 116, 117 (Utah 1989), and cases cited therein; *State v. Colonna,* 766 P.2d 1062, 1063 (Utah 1988).

struck his left flank. Defendant fled from the scene in his car and then on foot but was quickly apprehended. On appeal from his convictions and sentences, defendant makes numerous claims of error.

## I

Defendant claims that the evidence presented at trial was insufficient to convict him of attempted first degree murder. He contends that the State failed to prove an essential element of attempted murder in that it did not show he intended to kill the trooper. In the alternative, defendant asserts that even if the evidence establishes intent, it only supports a conviction of attempted manslaughter.

 In reviewing defendant's claim that the evidence does not establish intent, we view the evidence and all inferences that can reasonably be drawn from it in the light most favorable to the jury's verdict.[2] In *State v. Booker*,[3] we noted, "So long as there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made, our inquiry stops."[4] While we will not infer intent to murder from the simple fact that a defendant used a weapon likely to cause death,[5] sufficient evidence exists in this case from which defendant's intent to commit murder may reasonably be inferred.

A few hours before the shooting, defendant called his girlfriend's apartment and spoke with her roommate. Defendant was upset because his girlfriend was seeing another man. He indicated that he was going to beat up his girlfriend's suitor, tear off his legs, and blow off his head and threatened he might blow up his girlfriend's apartment building. As defendant spoke, he repeatedly loaded and unloaded a gun. He claimed to have a rifle with a scope, a .357 magnum, and a sawed-off shotgun in his possession. The roommate told officers that defendant had a high-powered rifle with a scope and that if the police were called, he would be able to see that they had come, the implication being that he would shoot any officer who attempted to interfere with him. The roommate called the police, reported the threats, and sought and received their protection. It would not be unreasonable for the jury to infer that defendant was highly agitated on the night in question and intended to shoot anyone— including an officer—who frustrated his activity.

Defendant claims that he shot Trooper Bringhurst in self-defense—that he was shot at three times before he fired back. Defendant's testimony, however, was contradicted by Trooper Bringhurst's and that of another officer who testified that from a few blocks away he heard the deep "kaboom" of the shotgun followed by five sharp "cracks" of the service revolver. Since evidence exists that defendant fired first, it would not be unreasonable for the jury to infer that his intent was to kill Trooper Bringhurst.

Defendant does not claim, nor does it appear, that the shooting was accidental. At minimum, defendant picked up the gun, cocked it, and pulled the trigger. Trigger pull alone was eleven to fourteen pounds, requiring considerable effort to fire the gun. The jury may have reasonably inferred that defendant intended to shoot the trooper. It may have also inferred that defendant sought the confrontation. He made no effort to correct his erratic driving, even when he knew Trooper Bringhurst was watching, he readily indicated to the trooper that he had been drinking, and rather than immediately pulling over, he drove to a quiet side street and stopped his car in the lane of travel. All told, sufficient evidence exists from which defendant's intent to commit murder may reasonably be inferred.

---

**2.** *State v. Simmons,* 759 P.2d 1152, 1158 (Utah 1988) (Hall, C.J., concurring & dissenting), and cases cited therein; *State v. Eldredge,* 773 P.2d 29, 38 (Utah 1989), *cert. pending* (filed 5/30/89), and cases cited therein.

**3.** 709 P.2d 342 (Utah 1985).

**4.** *Id.* at 345 (citation omitted), *quoted in State v. Johnson,* 771 P.2d 1071, 1072 (Utah 1989).

**5.** *State v. Castonguay,* 663 P.2d 1323, 1326 (Utah 1983).

■ Defendant contends that his level of intoxication made it impossible for him to formulate the requisite intent to kill Trooper Bringhurst. As support, he cites Utah Code Ann. § 76–2–306 (1978), which states in part: "Voluntary intoxication shall not be a defense to a criminal charge unless such intoxication negates the existence of the mental state which is an element of the offense." In this case, the State had to establish that defendant's intent was to cause the death of Trooper Bringhurst. Once established, it was defendant's burden to show that his intoxication was so great that it barred the formation of intent.[6] To meet this burden, defendant needed to prove more than that he had been drinking. He had to show that his mind was affected to such an extent that he did not have the capacity to form the requisite intent to kill.[7]

■ Defendant testified that he consumed a "liter and a fifth" of whiskey before the shooting and introduced stipulated evidence that his blood alcohol level was .203 after the event. While his driving was erratic, it was not flagrantly reckless. He was aware of his surroundings and was able to understand and answer questions. He was able to recall details of the incident after the event. And despite his wounds, when he fled from the scene he exhibited speed, dexterity, and strength. These facts and circumstances are not necessarily indicative of one so intoxicated that he or she could not intentionally or knowingly engage in a prohibited act. Hence, we are not convinced that the jury must have entertained a reasonable doubt that defendant lacked the capacity to formulate intent.[8] The court instructed the jury on the defense of voluntary intoxication; the jurors apparently rejected the defense.

Since there exists evidence sufficient to support the jury verdict, our inquiry stops and we sustain the verdict.

■ Defendant claims that even if the evidence establishes intent, it only supports a conviction for attempted manslaughter because he "reasonably believe[d] the circumstances provide[d] a legal justification or excuse for his conduct although the conduct [was] not legally justifiable or excusable under the existing circumstances."[9] Defendant's contention hinges on whether the trooper shot first and defendant acted in self-defense or whether defendant fired first. If defendant fired first, a belief that the circumstances provided a legal justification or excuse for his conduct would be unreasonable. Since there exists sufficient evidence to support the jury determination that defendant fired first, defendant's claim fails and we sustain the jury verdict.

## II

Defendant asserts that the trial court erred when it refused to suppress his prior misdemeanor convictions for theft in 1985 and theft by deception in 1982. The trial court ruled that the prior convictions were crimes of dishonesty or false statement under Utah Rule of Evidence 609(a)(2). It may be claimed that nearly all crimes involve some form of dishonesty or false statement. However, in *State v. Bruce*,[10] we held that crimes of theft and burglary are not necessarily crimes of dishonesty or false statement within the meaning of rule 609(a)(2). *Bruce* noted that crimes of dishonesty or false statement are those which involve " 'some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.' "[11] In most cases, theft is not classified as a

6. *Cf. State v. Wood*, 648 P.2d 71, 90 (Utah) (defendant must show intoxication negated capacity to form requisite intent to commit robbery), *cert. denied*, 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982).

7. *Id.*

8. *See State v. Petree*, 659 P.2d 443, 444 (Utah 1983), *superseded by rule on other grounds as* stated in *State v. Walker*, 743 P.2d 191 (Utah 1987).

9. *See* Utah Code Ann. § 76–5–205 (Supp.1989).

10. 779 P.2d 646 (1989).

11. *Id.* at 654 (quoting *United States v. Smith*, 551 F.2d 348, 362 (D.C.Cir.1976) (quoting H.R. Conf.Rep. No. 93–1597, 93d Cong., 2d Sess. 9, U.S.Code Cong. & Admin.News 1974, p. 7051)).

crime of dishonesty or false statement because it is generally not indicative of a witness's inclination to lie.[12] However, when a prior theft is "committed by fraudulent or deceitful means bearing directly on the accused's likelihood to testify truthfully," it can be considered a crime of dishonesty or false statement under rule 609(a)(2).[13]

There is no evidence that the 1985 theft conviction was committed through fraudulent or deceitful means. Under *Bruce*, the trial court erred in refusing to suppress that conviction. The 1982 theft by deception conviction, however, is different. Defendant purchased a saw from a variety store on day one. On day two, a friend returned the saw, claimed he lost the receipt, and got cash back. Sometime between days two and three, defendant apparently entered the store and stole the saw. On day three, he returned the same saw—this time with the receipt—and got cash back again. This theft was committed by fraudulent or deceitful means and is indicative of defendant's veracity. The trial court properly admitted this particular conviction to impeach defendant's credibility under rule 609(a)(2).

While the trial court erred in admitting defendant's 1985 theft conviction, the error was harmless. Rule 30(a) of the Utah Rules of Criminal Procedure states: "Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." In dealing with nonconstitutional error, "we will not reverse a conviction unless the error is substantial and prejudicial in the sense that there is a reasonable likelihood that in its absence there would have been a more favorable result for the defendant."[14] Considering all of the circumstances in this case and the evidence against defendant, there is no reasonable likelihood there would have been a more favorable result for defendant absent the trial court's error.

## III

Defendant claims that the lower court erred in admitting the blood-stained uniform of Trooper Bringhurst because its probative value was substantially outweighed by its prejudicial effect. On appeal, the State contends that the uniform was necessary to show that defendant fired at a uniformed police officer and to corroborate the trooper's testimony. At trial, the court indicated that it thought the uniform was probative of the extent of the trooper's injuries. We will not interfere with a trial court's ruling under rule 403 " 'unless it clearly appears that the lower court was in error.' "[15] We may also affirm the trial court's decision to admit evidence on any proper ground even though the trial court assigned another reason for its ruling.[16]

The probative value of evidence is judged by the "strength of the evidence and its ability to make the existence of a consequential fact either more or less probable"[17] and "the proponent's need for the evidence."[18] While the shirt shows that defendant shot at a uniformed officer, it was not indispensable to establish that fact. The trooper testified that the uniform he wore at trial was substantially identical to the one he wore on May 27, 1986, and defendant readily admitted that on the night of the shooting, he recognized the trooper as "a lawman, a police officer." The State did not need the uniform to corroborate Trooper Bringhurst's testimony; certainly the shirt does not reveal who shot whom first or any other disputed fact. Neither was the uniform needed to prove the extent of the trooper's injury since that

---

12. See *Bruce*, 779 P.2d at 656 (citing *United States v. Yeo*, 739 F.2d 385, 387 (8th Cir.1984)).

13. *Bruce*, 779 P.2d at 656.

14. *Johnson*, 771 P.2d at 1073 (footnote omitted).

15. *State v. Williams*, 773 P.2d 1368, 1370 (Utah 1989) (quoting *State v. Gray*, 717 P.2d 1313, 1316 (Utah 1986)).

16. *Gray*, 717 P.2d at 1316.

17. *Williams*, 773 P.2d at 1371 (footnote omitted); *United States v. Grassi*, 602 F.2d 1192, 1195 (5th Cir.1979), *jdm't vacated on other grounds*, 448 U.S. 902, 100 S.Ct. 3041, 65 L.Ed.2d 1131 (1980).

18. *Grassi*, 602 F.2d at 1195.

was never contested. And obviously, expert testimony, victim testimony, and photographs of an injury—all of which were admitted at trial—are better resources for determining the magnitude of injury than a blood-stained shirt. The probative value of the shirt was minimal at best.

 Still, minimally probative evidence need not always be excluded. Rather, it *"may* be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice...." [19] The shirt is apparently brown in color with dried blood on the shoulder. A brown shirt with dried blood on it does not equate with the evidence we have previously deemed highly prejudicial.[20] Although admission of the trooper's uniform may have created some danger of prejudice, its probative value was not substantially outweighed by such danger.[21] As the trial court noted, "[T]he probative value [of the shirt] was at least equal to the prejudicial value." Since proper grounds exist for the trial court's decision and it does not clearly appear that the court erred, we will not interfere with its ruling.

## IV

Defendant contends that the trial court erred in admitting the testimony of his girlfriend's roommate regarding the telephone conversation he had with her the night of the shooting. He first claims that the testimony was irrelevant. If relevant, he claims that it was evidence of a prior bad act and therefore inadmissible or that its probative value was substantially outweighed by its prejudicial effect.

We have determined that evidence is only admissible if it is relevant to prove some fact that is material to the crime charged.[22] As previously noted, the roommate's testi-

mony was relevant to prove defendant's intent, a material fact in this case.

 While Utah Rule of Evidence 404(b) excludes evidence of prior bad acts to show that a defendant acted in conformity with those acts, it does allow admission of prior crimes, wrongs, or acts to prove, among other things, intent. The State disputes defendant's assumption that the phone threats constitute a prior bad act. Rather, the State contends—and we agree—that the phone call was the beginning of a string of events all closely related in time that ended with the shooting of Trooper Bringhurst. As such, the phone call was part of a single criminal episode.[23] However, even assuming that the phone call was evidence of a prior bad act, the trial court did not err in admitting the roommate's testimony since it tended to prove defendant's intent.

As noted above, rule 403 requires courts to balance the probative value of proffered evidence against its propensity to prejudice. Defendant contends that the probative value of the roommate's testimony was substantially outweighed by its prejudicial effect and caused the jury to convict him of bad character rather than of the crime charged. The roommate's testimony may well have prejudiced defendant. "However, if the evidence has relevancy to explain the circumstances surrounding the instant crime, it is admissible for that purpose; and the fact that it may tend to connect the defendant with another crime[, wrong, or act] will not render it incompetent." [24] The roommate's testimony substantially buttressed proof of defendant's intent, and it was therefore probative. Whether its probative value was substantially outweighed by its prejudicial effect is

**19.** Utah R.Evid. 403 (emphasis added).

**20.** *See, e.g., State v. Lafferty,* 749 P.2d 1239, 1257 (Utah 1988).

**21.** *See State v. McClain,* 706 P.2d 603, 605 (Utah 1985).

**22.** *See State v. Forsyth,* 641 P.2d 1172, 1176 (Utah 1982); *see also* Utah R.Evid. 401 (definition of relevant evidence).

**23.** Utah Code Ann. § 76–1–401 (1978) defines "single criminal episode" as "all conduct which is closely related in time and is incident to an attempt or an accomplishment of a single criminal objective."

**24.** *State v. Daniels,* 584 P.2d 880, 882 (Utah 1978) (citations omitted).

a question within the sound discretion of the trial court, whose ruling we will not reverse absent clear error.[25] Such error is nonexistent here.

## V

Defendant claims that the trial court erred when it refused to grant a mistrial after the prosecutor's direct examination of a Salt Lake police officer. Defendant objected to the following exchange:

Q. Are you familiar with the defendant, Danny Lee Johnson?

A. Yes, I am.

Q. And how did you come to know him?

A. I spent guard duty one day up at the hospital on him.

. . . .

Q. Do you recall particularly which hospital it was ...?

A. Not offhand. I have had several guard duties in the last little while.

Q. And what is hospital guard duty?

A. Basically you're there to stop any escape attempts.

 Defendant claims that "[t]he prosecutor impermissibly elicited the comment that [defendant] was an 'escape risk' and thereby prejudiced the jury against [him]." Defendant's claim is tenuous at best. The officer's answer was a general explanation of an apparently routine task and did not indicate that defendant was a violent or dangerous person, or even that he was necessarily an escape risk. It was obvious at trial that defendant was arrested and charged for attempted murder of a police officer. Despite defendant's contention, a case where jurors may infer that a defendant is in guarded custody is not analogous to those cases where a jury is allowed to see an accused in handcuffs, shackles, or jail garb.[26] Likewise, the mere presence of testimony which indicates that a defendant

was being guarded is not the same as the intentional introduction of evidence of an accused's prior crimes, wrongs, or acts to show that he or she acted in conformity therewith.[27] Any prejudice defendant may have suffered by the direct examination of his hospital guard was minimal and does not justify reversal in this case.

## VI

Defendant called a Utah Highway Patrol lieutenant as a witness to testify about prior inconsistent statements made by Trooper Bringhurst. He sought to have the lieutenant declared a hostile witness or witness identified with an adverse party so that he could ask leading questions during the lieutenant's direct examination. The lieutenant was a friend of Trooper Bringhurst's and had known him thirteen to fourteen years. He acknowledged a true reluctance to aid or appear to aid the defense and was upset at having to testify for defendant. He admitted that he felt that in this case justice would best be served by defendant's conviction. The court ruled that until the witness was shown to be hostile in his answers, it would not declare him hostile even though he was associated with an adverse party. Defendant claims that the trial court erred.

> Utah Rule of Evidence 611(c) indicates: Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily[,] leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

 This rule is identical in substance to the federal rule. Before rule 611(c) of the Federal Rules of Evidence was adopted, a party was required to show that a witness was actually hostile or an ad-

---

**25.** *Supra* note 15 and accompanying text.

**26.** *See, e.g., Estelle v. Williams,* 425 U.S. 501, 504, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (trial in jail clothes might undermine presumption of innocence), *reh'g denied,* 426 U.S. 954, 96 S.Ct. 3182, 49 L.Ed.2d 1194 (1976).

**27.** *See, e.g., State v. Saunders,* 699 P.2d 738, 741 (Utah 1985) (evidence of prior crimes presumed prejudicial and excluded absent reason for admission other than to show criminal disposition).

verse party or an officer, director, or managing agent of an adverse party before it could lead such a witness.[28] The advisory committee to the Federal Rules of Evidence [29] felt that these limitations were too restrictive and drafted Federal Rule of Evidence 611(c) "to enlarge the categories of witnesses automatically regarded as adverse, and therefore subject to interrogation by leading questions without further showing of actual hostility." [30] In most cases, when a party calls a witness who is identified with an adverse party, as the Utah Highway Patrol lieutenant was, the witness should be regarded and treated as hostile.

■■■ This conclusion, however, does not upset the trial court's ruling. Rule 611(c) is still framed in words of suggestion rather than command, and whether it will be applied is a matter ultimately left to the discretion of the trial judge.[31] We find no abuse of that discretion. Defendant made no claim at trial that he was unable to elicit information from the lieutenant, and on appeal, he fails to identify information he sought but did not receive.[32] Our review of the record indicates that the lieutenant was cooperative with defense counsel on direct examination and although he was associated with an adverse party, his answers were not hostile. While the trial court did not follow the preferred procedure, it nevertheless did not err.

### VII

Defendant exposed several inconsistencies between Trooper Bringhurst's testimony at trial and statements he made follow-

ing the shooting. In rebuttal, the State, over defendant's objection, called two Highway Patrol officers to testify to the trooper's reputation for honesty. The State claimed that exposure of the prior inconsistent statements amounted to an attack on the trooper's credibility that justified the admission of positive character evidence under Utah Rule of Evidence 608(a). Rule 608(a) provides:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

The issue presented is whether the introduction of evidence of prior inconsistent statements constitutes an attack on truthfulness so as to allow the introduction of evidence of truthful character. •

■■■ Defendant's claim is that prior inconsistent statements were elicited to illustrate a witness's inability to recall an event, not to question his or her truthfulness. The State contends that this is "a distinction without a difference." It reasons that if a witness cannot recall what occurred, he or she is consequently a witness who is not credible. While we agree that an attack on a witness's memory may be an attack on his or her credibility, it is not an attack on "the character of the witness for truthfulness." In short, an attack on one's memory is not the same as an attack on one's character.[33] In the for-

---

**28.** *Ellis v. City of Chicago*, 667 F.2d 606, 612 (7th Cir.1981) (citing in part Fed.R.Civ.P. 43(b) (repealed 1975)); *see* Utah R.Civ.P. 43(b) (amended 1986).

**29.** This Court may look to the federal advisory committee notes as well as federal court interpretation of the federal rules to aid in interpreting the Utah rules. *See Gray,* 717 P.2d at 1317; Preliminary Note of Committee, Utah R.Evid.

**30.** *Ellis,* 667 F.2d at 612–13; *Haney v. Mizell Memorial Hospital,* 744 F.2d 1467, 1477–78 (11th Cir.1984); 3 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 611[05], at 611–76 to –84 (1988); *see also* Fed.R.Evid. 611(c) (advisory

committee's note) ("The final sentence [of rule 611(c)] deals with categories of witnesses automatically regarded and treated as hostile.").

**31.** *Ellis,* 667 F.2d at 613; *United States v. Brown,* 603 F.2d 1022, 1025–26 (1st Cir.1979).

**32.** *See Ellis,* 667 F.2d at 613.

**33.** While we agree that " '[a] basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness,' " *Beard v. Mitchell,* 604 F.2d 485, 503 (7th Cir.1979) (quoting *United States v. Hale,* 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45

mer instance, rule 608 does not apply. The trial court erred in admitting evidence of Trooper Bringhurst's reputation for truthfulness since his character for truthfulness was never attacked.

 While the trial court erred, we believe its error was harmless. Considering all of the circumstances in this case and the evidence against defendant, there is no reasonable likelihood there would have been a more favorable result for defendant absent the error.[34]

## VIII

Defendant claims that questions asked by jurors early in the trial constitute evidence of their premature deliberation in violation of his rights to due process of law and trial by an impartial jury under the federal and state constitutions.[35] Specifically, defendant objects to the following dialogue:

Q. [By defense counsel] The question was do you recall making the statement [at the preliminary hearing] that you saw what you believed to be a shotgun[?]

A. [By Trooper Bringhurst] I don't recall making that statement.

THE COURT: Just one minute.

JUROR # 6: I have a question. We were told what was said in here today is what we're supposed to go by totally; is that right?

THE COURT: Just the evidence.

JUROR # 6: Anything presented today.

THE COURT: Any time during the course of a trial the only thing you're to consider is the testimony from the witness who is talking or any of the evidence that is introduced into court.

JUROR # 6: Okay. I'm just wondering. I know myself, I cannot remember things that happened—

THE COURT: Okay. Now, what you're going to have to do is take the notes as much as possible and then you're going to have to try to recollect at the time you deliberate as to what was taking place....

[Defense Counsel]: Your Honor, I think also if the Court would indicate that the significance of what is said and the evidence that's introduced will be tied up by the attorneys and that they just need to listen to the evidence.

THE COURT: Yes. They will be giving a closing argument where they will try to piece together everything like they did in the opening argument.

JUROR # 6: That is what my question was.

THE COURT: From that you will have to put it all together, because they will tell you what each of these things meant and then what each testified to.

JUROR # 6: That's what I was looking for.

JUROR # 9: Maybe somebody doesn't know. I don't know what a sawed off shotgun is. Is it the barrel or the handle or both, or what? You keep talking about a sawed off shotgun.

. . . .

THE COURT: Normally during the trial we don't have jurors ask questions. So if you have any questions, if you will write it out on a note pad, I will discuss it with the two counsel so it will not influence the other jurors in regards to any questions that you may have at this time.

 While not encouraged, it is within the trial court's discretion to allow

---

L.Ed.2d 99 (1975)), we are not of the view that every attack on credibility is an attack on character. *See United States v. Danehy,* 680 F.2d 1311, 1314 (11th Cir.1982) (that a witness is contradicted by other evidence does not mean his or her reputation for truth and veracity is attacked); *see also supra* note 29 (interpretation of federal rules by federal courts aid in interpreting Utah rules).

**34.** *See* Utah R.Crim.P. 30(a); *supra* text accompanying note 14.

**35.** U.S. Const. amends. XIV, VI; Utah Const. art. I, §§ 7, 10 & 12. Although in raising his constitutional claims, defendant relies on both the federal and state constitutions, he does not specifically claim that the federal and state analyses differ. Therefore, we treat his claim as based only on federal constitutional provisions. *State v. Stilling,* 770 P.2d 137, 142 n. 26 (Utah 1989), and cases cited therein.

jurors to ask questions in court.[36] In this case, we find no abuse of that discretion. Neither do we find the questions and statements of jurors six and nine to constitute premature deliberation.

The fears of premature deliberation are (1) that the jury will consider evidence without the aid of the court's final instructions and (2) that a juror who has expressed his or her opinion regarding a particular fact will become irretrievably devoted to that opinion in defiance of contrary evidence.[37]

Juror nine's question was one of clarification and was within the court's discretion to allow. Whether juror six was stating that it was inconsequential that Trooper Bringhurst could not remember details or whether he was asking if he needed to remember the details of all evidence presented is arguably unclear. His satisfaction upon finding there would be a closing argument indicates he was asking the latter. However, even if he was stating the former, he apparently was not irretrievably devoted to that opinion since he candidly admitted to asking something else. Juror six may have been weighing, balancing, thinking about, and comparing elicited evidence to personal experience, but that is part of the human thought process and is different than when jurors deliberate among themselves and arrive at conclusions prior to the end of trial. The trial court is expected to prevent premature deliberation, not harness the human mind. We find no error.

## IX

Defendant claims that it became necessary for defense counsel to testify in his behalf and that the trial court erred when it denied counsel's motion to withdraw and motion for mistrial. He also contends that this error denied him his rights to due process and compulsory process pursuant to the fourteenth and sixth amendments to the United States Constitution.

At trial, defendant testified that three years earlier he had met a detective with the West Valley Police Department who asked defendant to acquire illegal guns for him. Defendant testified that the weapons found in his car the night of the shooting, including the sawed-off shotgun, were procured for the detective.

In its rebuttal on the last day of trial, the State called the detective as a witness. He testified that he accepted information from defendant beginning in 1982 or 1983 and that on two occasions defendant informed him of specific weapons and their whereabouts. He noted that the police department elected to terminate its relationship with defendant in May 1985. His last contact with defendant was by telephone in September or October of 1985; defendant requested a meeting with him at the White Horse Lounge to discuss the purchase of illegal weapons, but they did not meet. The detective conceded that he did not tell defendant of the department's decision to terminate the relationship.

On cross-examination, the detective denied telling defendant's counsel in a phone conversation that (1) the only reason he did not meet with defendant at the White Horse Lounge was because they kept missing each other and (2) the only incident with defendant regarding weapons was the requested meeting at the lounge. Defendant claims that it was necessary for his counsel to testify to rebut the inaccuracies of the detective's testimony.

In *State v. Leonard*,[38] we stated, "The great weight of authority ... is that it is error for counsel to continue representation where he or she is or ought to be a witness with respect to issues that are not incidental or insignificant."[39] Counsel's proffered testimony in that case was crit-

---

**36.** *See State v. Martinez,* 7 Utah 2d 387, 389, 326 P.2d 102, 103 (1958) (citing in part *State v. Anderson,* 108 Utah 130, 158 P.2d 127 (1945)).

**37.** *See State v. Washington,* 182 Conn. 419, 426, 438 A.2d 1144, ·1147–48 (1980), and cases cited therein.

**38.** 707 P.2d 650 (Utah 1985).

**39.** *Id.* at 653.

ical in that it went to the defendant's asserted innocence. Given our above analysis of intent, counsel's proffered testimony in this case addressed only incidental or insignificant collateral issues. We find no error in the trial court's denial of counsel's motions to withdraw and for mistrial.

Defendant relies on *Washington v. Texas* [40] and *Webb v. Texas* [41] for the proposition that it is a defendant's constitutional right to present his or her own witnesses—including his or her counsel—to establish a defense. *Washington* and *Webb*, however, are inapposite to defendant's case. *Washington* declared unconstitutional a Texas statute that prevented an entire class of witnesses from testifying on behalf of a defendant. *Webb* held that a judge's threatening remarks to the defendant's only witness effectively drove the witness from the stand, depriving the defendant of his right to present witnesses in his own behalf. Neither case addresses the problems inherent in a counsel's motion to withdraw in order to testify to collateral issues. We abide by the precedent set in *Leonard* and decline to depart therefrom.

## X

■ Defendant claims that the cumulative impact of the trial court's errors warrants reversal of his conviction. " ' "Cumulative error" refers to a number of errors which prejudice [a] defendant's rights to a fair trial.' " [42] Despite the fact that some error occurred at trial, even the combined effect thereof does not lead us to believe that defendant's right to a fair trial was prejudiced.

## XI

Defendant maintains that a conviction for attempted homicide cannot be used as the underlying substantive offense of a

habitual criminal enhancement since the statute specifically excludes homicide as a triggering offense. The habitual criminal statute provides:

> Any person who has been twice convicted, sentenced, and committed for felony offenses at least one of which offenses having been at least a felony of the second degree or a crime which, if committed within this state would have been a capital felony, felony of the first degree or felony of second degree, and was committed to any prison may, upon conviction of at least a felony of the second degree committed in this state, other than murder in the first or second degree, be determined as a habitual criminal and be imprisoned in the state prison for from five years to life. [43]

■ We need not, and therefore do not, reach the issue of whether first and second degree murder constitute underlying substantive offenses which trigger application of the habitual criminal statute. This is so because defendant was convicted of attempted murder, which is not the same as murder. Had the legislature intended to exclude attempted murder as a triggering offense, it could have listed the exception in the statute as it has done in other situations. [44] Since attempted first degree murder is not excepted in the habitual criminal statute, the trial court did not err in using defendant's conviction in this case as the underlying substantive offense to trigger the statute.

## XII

Defendant claims that the trial court erred in finding him to be a habitual criminal since the State failed to prove that he knowingly, intelligently, and voluntarily entered guilty pleas to charges upon which the State relied to prove he was a habitual

---

**40.** 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

**41.** 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972).

**42.** *State v. Ellis,* 748 P.2d 188, 191 (Utah 1987) (quoting *State v. Rammel,* 721 P.2d 498, 501–02 (Utah 1986)).

**43.** Utah Code Ann. § 76–8–1001 (1978).

**44.** *See, e.g.,* Utah Code Ann. § 76–3–406(1) (Supp.1989) (probation, suspension, and lower category of offense shall not be granted for certain listed attempt crimes); *see also* Utah Code Ann. § 76–4–102 (Supp.1989) (classification of criminal attempt).

criminal. Defendant's argument, however, misconstrues the burden which the State faces.

■ To be convicted of being a habitual criminal under Utah's habitual criminal statute, a person must have been twice convicted, sentenced, and committed for two prior felonies, at least one of which was a felony of the second degree.[45] Defendant admits that the State proved he was represented by counsel when he entered his guilty pleas, but he contends that the State is also obligated to establish that he knowingly, intelligently, and voluntarily entered those pleas. The State has no such obligation. In *State v. Branch,*[46] this Court stated:

> The State demonstrated that both pleas were entered with the benefit of counsel. Therefore, in the absence of any evidence demonstrating the pleas were involuntary, the pleas are presumed to have been voluntary. A defendant can overcome this presumption by presenting to the trial court some evidence of involuntariness, thus shifting back to the State the burden of demonstrating voluntariness. The defendant is the party who can most readily demonstrate that the pleas were involuntarily made if they indeed were; it therefore seems unreasonable to impose upon the State the duty of showing not only that the pleas were made with adequate counsel but also that the pleas were not involuntary.[47]

Defendant presented no evidence that his pleas were involuntary. In the absence of any evidence demonstrating involuntariness, the pleas are presumed to have been voluntary. The State met its burden, and defendant's convictions for charges to which he pleaded guilty were properly admitted to determine whether he was a habitual criminal.

## XIII

Defendant was previously convicted in Idaho for first degree burglary, escape from the Idaho prison, escape from the Idaho prison farm facility, and assault with a deadly weapon. Defendant contends that the trial court erred in relying on the prior Idaho convictions to convict him of being a habitual criminal under the Utah habitual criminal statute.

■ The Utah habitual criminal statute requires a showing of two previous convictions; one must be for a felony of any degree, and one must be for a felony of at least the second degree.[48] Defendant and the State agree that defendant's prior Idaho assault conviction would be a third degree felony if committed in Utah. Defendant also essentially admits that his escapes from the Idaho prison would constitute second degree felonies under Utah's escape statute.[49] At minimum, these prior convictions fulfill the requirements of Utah's habitual criminal statute. The trial court did not err.

We have reviewed defendant's other contentions and find them to be without merit. The judgment of the trial court is affirmed.

HOWE, Associate C.J., and STEWART, J., concur.

DURHAM, Justice (concurring and dissenting).

I join the majority opinion except for part III, in which it finds no error in the admission of a bloody shirt. The shirt was entirely unnecessary and probably irrelevant to any issue which was the proper subject of proof. However, since its prejudicial value was minimal, I would declare the error harmless.

ZIMMERMAN, J., concurs in the concurring and dissenting opinion of Justice DURHAM.

**45.** Utah Code Ann. § 76-8-1001 (1978).

**46.** 743 P.2d 1187 (Utah 1987).

**47.** *Id.* at 1192–93.

**48.** *See* Utah Code Ann. § 76-8-1001 (1978).