**STATE of Utah, Plaintiff and Appellee,**

v.

**Gary Allan BARKER, Defendant and Appellant.**

**No. 890489–CA.**

Court of Appeals of Utah.

Aug. 22, 1990.

Roger K. Scowcroft, Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

John Spikes, Tom Blakely (Intern), Salt Lake City, for plaintiff and appellee.

Before BENCH, JACKSON and NEWEY,[1] JJ.

## OPINION

NEWEY, Judge:

Gary Barker appeals from his convictions for assaulting a peace officer in violation of Utah Code Ann. § 76–5–102.4 (1990), interfering with a peace officer making a lawful arrest in violation of Utah Code Ann. § 76–8–305 (1990), and public intoxication in violation of Utah Code Ann. § 76–9–701 (1990). We reverse and remand for a new trial.

On January 1, 1989, in response to a call concerning a domestic dispute, Salt Lake County Sheriff's Deputy Troy Naylor went to the home where Gary Barker resided with his parents, Alvin and Nan Barker. Because the office was shorthanded that New Year's Day, Deputy Naylor went alone.[2]

Alvin Barker (defendant Gary Barker's father) met Deputy Naylor on the street and accompanied him into the house. The deputy found Gary Barker in his bedroom, and he appeared to Deputy Naylor to be quite calm but somewhat intoxicated. His bedroom was in disarray, and he was packing his belongings, a pile of which Deputy Naylor had passed in the living room. Nan Barker, very agitated, was screaming for

Gary Barker to leave. Deputy Naylor attempted to separate the disputants and talk with Gary Barker alone, but the Barker parents repeatedly interrupted him.

Deputy Naylor suggested to Gary Barker that he leave, and escorted him to the living room area. Gary Barker began throwing clothes and luggage out the door. According to Deputy Naylor, Gary Barker had said his parents owed him money, and, with his belongings out the door, he vaguely muttered something about "collateral" and began to move farther into the living room. Deputy Naylor then attempted to restrain him physically and told him he was under arrest. Gary Barker replied that he was not under arrest and attempted to break free. Deputy Naylor then forced him to the floor and held his knee on Gary's back. Nan Barker then began screaming at the deputy not to hurt her son, who had a hernia ailment. Deputy Naylor relaxed the pressure on Gary Barker somewhat, and Gary forced his way to his feet and went into the kitchen, with Deputy Naylor still attempting to restrain him. The physical struggle continued until Deputy Naylor, with the aid of Alvin Barker, again forced Gary Barker to the floor, located his walkie talkie, and summoned help. Other officers, including Deputy Dan Troester, soon arrived and Gary Barker stopped struggling. He was taken into custody and transported to the hospital to check on his hernia condition.

Gary Barker was tried before a jury and convicted of assaulting a police officer (a Class A misdemeanor), interfering with a peace officer making a lawful arrest (a Class B misdemeanor), and public intoxication. He was fined $2,500, assessed $200 for court-appointed counsel, and sentenced to a year's incarceration beginning forthwith. He has appealed.

---

1. Robert L. Newey, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1990).

2. Deputy Naylor was the only witness called by the State who was present when the crime was committed. Since the jury found for the State,

we view the facts in the light most favorable to sustaining the convictions, *State v. Gardner,* 789 P.2d 273, 285 (Utah 1989). We have therefore relied extensively on Deputy Naylor's testimony and resolved conflicts and doubts in the evidence according to his view of the facts.

■ Gary Barker directs our attention to the rebuttal testimony of Deputy Dan Troester, one of the officers who arrived after Gary Barker had been more or less subdued and who helped take Barker into custody. The State called Deputy Troester twice, once in its case in chief and again in rebuttal. In the State's case in chief, Deputy Troester testified that he returned a coat belonging to Gary Barker shortly after he was taken into custody and spoke briefly with Alvin Barker. The State then questioned Deputy Troester about what Alvin Barker had said, the defense objected, and the court excluded the hearsay. Testifying in rebuttal, Deputy Troester recounted the same incident, and the State again attempted to elicit testimony about what Alvin Barker had said to Deputy Troester. The defense again objected on hearsay grounds, but this time the court overruled the objection and allowed the question for impeachment purposes. (Alvin Barker had testified for the defense.) Deputy Troester then answered, quoting Alvin Barker:

> [Alvin Barker said, "Y]ou should have a policy with your department to have two deputies respond to an incident like this because he could have been seriously hurt.["] And I stated we did, but we were short of manpower due to the shift change and everything like that. Then he asked me if I would tell him the officer's name and he wanted me also to tell the officer thanks for the fine job he did.

Deputy Troester's repetition of what Alvin Barker had said was clearly hearsay,[3] unless it fits within the confines of Utah Rule of Evidence 801(d)(1), which excludes from the definition of hearsay certain precisely specified types of out-of-court statements by a witness:

> (d) *Statements which are not hearsay.* A statement is not hearsay if:

> 1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination con-

cerning the statement and the statement is (A) inconsistent with his testimony or the witness denies having made the statement or has forgotten, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving him[.]

Of the three types of prior statements enumerated in the rule, (B) and (C) clearly have no application. The trial court admitted the testimony for impeachment, and therefore, only (A) is relevant, and the statement is not hearsay if it is inconsistent with Alvin Barker's prior testimony, or if Alvin Barker had earlier denied or forgotten having made the statement.

To determine whether the statement is inconsistent,[4] or was denied or forgotten, we turn to Alvin Barker's prior testimony. That testimony did not include a general opinion about the quality of Deputy Naylor's work that afternoon, but Alvin Barker did recount the fight between Deputy Naylor and Gary Barker. He noted that the deputy was first to use physical force, that Gary did not strike the deputy, and that, under those circumstances, the deputy's force seemed excessive:

> Q  Do you, since you were there, do you have any opinion as to the level of force that Officer Naylor used on Gary?
>
> . . . .
>
> A  I think it was unnecessary to use force under the circumstances.
> Q  Why do you feel that way?
> A  Because Gary never done anything [to] him—attacked him in the first place.
> Q  Was Gary leaving the house?
> A  He was—he was going to put something out on—out—something out on the porch 'cause his friend was coming after him. Could have been handled differently.

---

3. *See* Utah R.Evid. 801(c).

4. *See United States v. Brennan,* 798 F.2d 581, 587–89 (2d Cir.1986); *United States v. Williams,*

737 F.2d 594, 606–10 (7th Cir.1984), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985).

Q   Did Gary ever strike Officer Naylor?

A   No.   Not that I seen.

In a somewhat tangential way, this testimony was relevant to Alvin Barker's opinion on the overall "job [Deputy Naylor] did." Since Alvin Barker's overall opinion may be inconsistent with his observations of aggressiveness and excessive force, the court did not abuse its discretion in placing it within the class of statements described in Utah R.Evid. 801(d)(1)(A).

However, rule 801(d)(1) applies only if the declarant "is subject to cross-examination concerning the statement." Thus, if the declarant's out-of-court, inconsistent statement is introduced, the party adversely affected by it has a right to examine the declarant concerning the statement.[5] In this case, the defense asked to recall Alvin Barker, but the request was denied. Alvin Barker did not testify at all after the hearsay was admitted; yet without Alvin Barker's further testimony on the subject, rule 801(d)(1) does not prevent the statement from being hearsay. We therefore conclude that the statement was hearsay, and was admitted while the declarant was in court and available. No exception to the rule against hearsay appears to apply, nor is one asserted to apply. The statement should therefore have been excluded, if the defense was not to be permitted to call Alvin Barker in rebuttal.

▇ Having concluded that the court erred in failing to exclude Deputy Troester's restatement of Alvin Barker's opinion of Deputy Naylor's performance, we must now consider whether this error was harmless or prejudicial. An error is harmless, and not grounds for reversing a conviction, if, absent the error, there is no substantial likelihood of a better result for the defendant. Utah R.Crim.P. 30(a); *State v. Johnson*, 784 P.2d 1135, 1140 (Utah 1989); *State v. Verde*, 770 P.2d 116, 120–122 (Utah 1989).

In this case, one of the main points of the defense was that Deputy Naylor's use of force was excessive and overly aggressive. There were substantial factual discrepancies between the eyewitnesses' accounts of what happened, and Deputy Naylor's account (from which we have drawn the above statement of the facts) tends more to justify his role in this altercation than do the accounts of the Barker parents and of Gary Barker. In resolving this factual conflict, the testimony of Alvin Barker may well have been important. Alvin Barker intervened in the fight to aid Deputy Naylor in ending the struggle, but at trial, he saw no need for the deputy's resort to violence and portrayed Gary Barker's actions as mainly evasive and self-protective. Thus, the jury could well have found that Alvin Barker's testimony was critical in determining what happened, assessing the extent and nature of Gary Barker's resistance, and in evaluating his claim of self-defense.

Given the conflicting evidence, and also in view of the rather lengthy jury deliberations, this appears to have been a close case factually. We therefore conclude that, if Alvin Barker's hearsay statement had been excluded or if Alvin Barker had been permitted to testify concerning it, there is a significant possibility of a result more favorable to the defendant Gary Barker.

We therefore reverse and remand.

BENCH and JACKSON, JJ., concur.

---

5.   *United States v. West*, 670 F.2d 675, 686–87 (7th Cir.1982) *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982); *United States v. Fiore*, 443 F.2d 112 (2d Cir.1971); *see United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 844, 98 L.Ed.2d 951 (1988) (cross-examination requirement of Fed.R.Evid. 801(d)(1) and right of confrontation are satisfied where declarant takes the stand and responds to questions concerning the out-of-court statement despite claimed lack of recall); 4 D. Louisell & C. Mueller, *Federal Evidence* § 419 at 179–81 (1985).